# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

## ELIZABETH C. DEITRICK v. I. N. LEADBETTER, M. B. BOWLES AND R. F. SANFORD.

April 8, 1940.

Record No. 2186.

Present, All the Justices.

The opinion states the case.

*Gordon B. Ambler* and *Beecher E. Stallard,* for the appellant.

*H. M. Ratcliffe, Parker E. Cherry* and *William C. Miller, Jr.,* for the appellees.

HOLT, J., delivered the opinion of the court.

In this cause the defendant has been enjoined from using her home on Chamberlayne avenue in the city of Richmond as a "tourist home."

The Lewis Ginter Land & Improvement Company owned a large tract of land which lay partly in Richmond and which extended northward into Henrico county. This it undertook to develop and marked out the land into lots and blocks. It is known as North Ginter Park. Block J is north of the old city line and in it is the defendant's home. On much of this development certain restrictive covenants were imposed, deemed to be for the benefit of the vendor and of lot purchasers generally.

Restriction No. 3: "That no part of said premises or of the building that may be erected thereon, shall be used for any purpose or in any manner that will create a nuisance, or make such use of said premises injurious or offensive to a good residential neighborhood."

Restriction No. 5: "That said land shall not be used except for residential purposes."

Mrs. Deitrick bought her home in 1937 for a plain purpose and paid therefor $7,750.

"Q. Do you state that your own intention was to buy it as a tourist home and not as a private residence?

"A. Yes."

In it are four tourist bedrooms, together with a dining room and a kitchen in which she, her husband and child lived. At the time of her purchase she had only constructive knowledge of these restrictive covenants, and it was not until she moved in that she saw her abstract of title and had actual knowledge thereof. Due to crowded conditions and to want of space, she determined to add to the home and her plan was to add three rooms. Some difficulty was experienced in obtaining a permit, but afterwards she secured one to build two rooms, to be used by her family, who had theretofore, as we have seen, lived in the dining room and kitchen. To prevent this addition was one of the purposes of this suit.

R. L. Sanford, one of the plaintiffs, lives in Block J on the southwest corner of Chamberlayne avenue and Westbrook avenue. To the north and immediately adjoining him is the home of plaintiff, M. B. Bowles, and adjoining him to the north is the defendant. Bowles bought in 1930. Immediately to the north of Deitrick is that of the plaintiff, I. N. Leadbetter, who bought in 1931. The third lot to the north belongs to H. L. Kelly, who bought in 1927 and who in 1935 converted his home into one for tourists. Nine lots to the north is another tourist home, and on the northwest corner of Block J, thirteen lots away, is a tourist home which has been operated by Laura E. Sawyer since 1931. These lots apparently front 100 feet on Chamberlayne ave-

nue, and in this block is a duplex house and a furnished apartment. In Block E, which lies to the south of Block J and across Westbrook avenue, are two other tourist homes.

■ It is said that these plaintiffs do not come into court with clean hands—that the Sanford home itself had been operated as a tourist home. If that be true, it can not be charged against the more immediate neighbors, Bowles and Leadbetter.

Mr. Sanford purchased his home about two years ago. He seems to have confined his hospitality to his wife's relations—to his mother-in-law, his father-in-law and his brother-in-law, who once boarded with him but have moved away.

These homes cost around eight or ten thousand dollars each, and, in a general way, belong to a common class. It was the purpose of the land company to have this remain an attractive residential section. These plaintiffs are naturally interested in their own community, particularly in the block in which they live and immediately in lots adjoining their own homes as well as in the business done there. They have a certain academic interest in the observation of all restrictions, but that is all. We need not undertake to discuss conditions far away, although in the same development, for they are of little immediate importance. "The distant Trojans never injur'd me."

■■ This tourist business, as here conducted, is not a nuisance. Its patrons are a "very high type people. We have had lawyers, doctors, preachers, missionaries, and we have had a judge from New York." But if it is a business, then this lot is not being used for "residential purposes" only. That it is a business can not be seriously questioned. The owner tells us that it was bought for business purposes. For its conduct a license was necessary and was obtained, and, to further her purpose, she became a member of the Richmond Chamber of Commerce. It was advertised and a sign was posted, indicative of its character. Although this restriction may be burdensome to this defendant, if it is a

lawful burden, it must be borne, just as must the restraint of zoning ordinances, to which it bears some analogy.

There are no Virginia cases directly in point, but from their examination this much may be safely said: Whenever land is developed under a general scheme, reasonable restrictive covenants which appear in deeds to all lots sold are enforceable alike by the vendor and by the vendees and by their successors in title. *Supervisors* v. *Bedford High School*, 92 Va. 292, 23 S. E. 299; *Spilling* v. *Hutcheson*, 111 Va. 179, 68 S. E. 250; *Elterich* v. *Leicht Real Estate Co.*, 130 Va. 224, 107 S. E. 735, 18 A. L. R. 441; *E. M. Whitehurst* v. *W. B. Burgess, et als.*, 130 Va. 572, 107 S E. 630; *Stevenson* v. *Spivey*, 132 Va. 115, 110 S. E. 367, 21 A. L. R. 1276; *Cheatham* v. *Taylor*, 148 Va. 26, 138 S. E. 545, and *Clarke* v. *Miller*, 149 Va. 251, 141 S. E. 141.

While such covenants are to be strictly construed, they cover things forbidden by necessary implication, just as they cover things named with unmistakable exactness. *Whitehurst* v. *Burgess, supra.*

Boarding houses are not private residences, and, on principle, it makes no difference if the boarder stays one day or two (*Tompkins* v. *Rogers*, 2 K B, 94—Div. Ct.; *Thorn* v. *Madden*, 1 Ch. 847, 14 BRC 286; *Trainor* v. *LeBeck*, 101 N. J. Eq. 823, 139 A. 16; *Seeley* v. *Phi Sigma Delta House Corporation*, 245 Mich. 252, 222 N. W. 180; *Dingeman* v. *Boerth's Estate*, 239 Mich. 234, 214 N. W. 239; *Sayles* v. *Hall*, 210 Mass. 281, 96 N. E. 712, 41 L. R. A. (N. S.) 625, Ann. Cas. 1912D, 475), although a different conclusion was reached in *John Hancock Mutual Life Ins. Co.* v. *Davis*, 173 Ga. 443, 160 S. E. 393.

It is contended, however, that even if this be true, these plaintiffs, by their conduct, are estopped by acquiescing in a situation which might have been more promptly remedied, in that Mrs. Deitrick had been allowed to incur expenses which need never have been made. We have seen that she had constructive notice of this covenant and that she had actual notice in that she saw her abstract of title when she moved in. Moreover, it is plain that plain-

tiffs could not have known what she was doing and never had an opportunity to tell her that she was proceeding at her peril. She was asked:

"Q. Did that consist in repairs and carpenter work, etc.?

"A. No, sir, that was furniture for bedrooms and bed linen and blankets and putting a light on the back garage, and I joined the State Chamber of Commerce—that was $12.50, and had cards printed and post cards of my house and all those things."

Such principles as apply at all are principles applicable rather to laches than to estoppel.

Mrs. Deitrick bought in April, 1937. She made application in June, 1938, for permission to add to her house, upon which protest was made. Plainly these plaintiffs did not sleep upon their rights.

■ Mere "acquiescence does not constitute abandonment so long as the restrictive covenant remains of any value." *Rogers* v. *Zwolak*, 12 Del. Ch. 200, 110 A. 674, 677. "The plaintiff's right to relief from a violation of the restriction which affects her lot was not forfeited by a mere failure to object to similar violations by some others in the neighborhood." *Goulding* v. *Phinney*, 234 Mass. 411, 125 N. E. 703, 704. To the same effect is *Bischoff* v. *Morgan*, 236 Mich. 251, 210 N. W. 226.

■ "The fact that the owner of property does not complain of the violation of a restriction by another or other owners against whom he is, or at least was, entitled to have the restriction enforced, which violation does not materially affect him in the enjoyment of his property, does not preclude him from enforcing the restriction against an owner whose violation of it does materially affect him." Berry on the Restrictions on the Use of Real Property, sec. 374.

In *Bischoff* v. *Morgan*, 236 Mich. 251, 210 N. W. 226, 227, it was said: "While defendants might have been litigious enough to have compelled observance by all builders within the scope of the restriction, yet their failure to prevent a violation not immediately detrimental to their enjoyment does not take away from them the right to have the restric-

tion observed by plaintiffs, next door to their home." See also, *Sayles* v. *Hall, supra.*

It is true that but for the contemplated addition to this tourist home no litigation would probably ever have been instituted. It was that which brought about the recrudescence of slumbering animosities. But for it the dog might still have slumbered. One should not be penalized for his patience.

Again, it is said that there has been such a change in local conditions as to make the application of this covenant unnecessary and undesirable. Changes consist of these tourist homes, a furnished apartment and a duplex house, but the essential character of the neighborhood is not changed at all—it is still preëminently a residential district, although motor traffic along Chamberlayne avenue, due to the opening of a new primary highway to the north, has been greatly augmented.

This is a fair statement of the rule which should govern us in such a case: "No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement." *Rombauer* v. *Compton Heights Christian Church,* 328 Mo. 1, 40 S. W. (2d) 545, 553.

The real issue in this case is the right to conduct this tourist home and not the right to add to the home two additional rooms. This undertaking merely served to bring to an issue matters in dispute.

Those who conduct taverns, hotels and boarding houses may live in them, but can it be said that they are not "used except for residential purposes?"

The decree appealed from must be affirmed, and it is so ordered.

*Affirmed.*