JOSEPHINE J. CANTIENY v. A. L. BOZE AND ANOTHER.[1]

February 21, 1941.

No. 32,580.

*Garfield H. Rustad* and *Shure & Shure,* for appellant.
*Henry N. Jenson* and *A. O. Sletvold,* for respondents.

[1]Reported in 296 N. W. 491.

LORING, JUSTICE.

This is a suit to restrain the defendants from operating a tourist camp upon lots 6 and 7 in Pokegama Beach, which is platted in section 1, township 138 north, range 41 west, along Detroit Lake in Becker county. The trial court found for the defendants, and the case comes here on appeal from an order denying plaintiff's motion for a new trial.

It appears from the record that John K. West and Agnes B. West, his wife, the owners of the property in section 1 above referred to, platted 41 lots in Pokegama Beach on May 17, 1909, and later executed and delivered deeds to various purchasers of lots in the plat. All of the deeds contained a restriction which reads as follows:

"Provided, however, that such premises shall not be used nor permitted to be used by said grantee, his heirs or assigns for the sale or manufacture of intoxicating liquors or shall any bawdy house be maintained thereon nor said premises be used for any unlawful purpose nor for any purpose other than as a place of residence and if said grantee, his heirs or assigns, shall permit or do any of the acts aforesaid premises hereby conveyed and all improvements placed thereon shall at once revert and become forfeited to and the absolute property of said grantor, his heirs, executors or assigns."

Cottages were erected on various lots, and it appears that the restriction in the deeds was part of a general plan of development calculated to restrict the platted property to residential purposes. The plaintiff became the owner of lots 4 and 5 through conveyance from the Wests which contained the restriction above referred to. The defendants in 1932 became the owners of lots 6 and 7 adjoining lot 5 by deed from their brother William, who had purchased them in 1929. The deed from William to defendants contained no restriction, though the deed from the Wests to William's predecessors in the title did contain the restriction. William erected some summer cottages on the lots in 1930, and

there is no claim that these original cottages were not residences within the meaning of the restriction. Some time prior to and during 1936 the defendants built ten small cabins about 10 x 10 or 10 x 12 such as are commonly erected in the ordinary tourist camp. These cabins were placed in two rows on the 50-foot lot adjoining plaintiff's lots. They each contained a double bed, a two-burner gas plate, and some dishes. One row of cabins was placed close to the line of plaintiff's lots. There was a central laundry, toilet, and shower bath. A register of guests and cars was kept at defendants' office, which was not on these lots. It is claimed by the plaintiff that when the cabins were being erected her mother, who was then the owner of lots 4 and 5, protested to the defendants and advised them that the property was restricted, but that the defendants took the position that since there was no restriction in the deed from their immediate grantor they were not bound by the restriction in the deed from the Wests, and they continued to erect cabins and operate them by renting them to tourists. The defendants deny that any protest was made to them or to William. The court found for the defendants on this issue. The plaintiff became the owner of lots 4 and 5 by deed from her mother in January, 1937. Upon the trial below the court held that the restriction in the West deeds did not exclude cabins such as defendants had erected and that the plaintiff had been guilty of such laches that a court of equity would not afford her relief.

■ Whenever land is developed under a general plan, reasonably restrictive covenants which appear in deeds to all lots sold are enforceable alike by the vendor and by the vendees and by their successors in title. Velie v. Richardson, 126 Minn. 334, 148 N. W. 286; Godley v. Weisman, 133 Minn. 1, 157 N. W. 711, 158 N. W. 333, L. R. A. 1917A, 333; Deitrick v. Leadbetter, 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849. There is no question here but that the restriction contained in the West deeds was in furtherance of the general plan to develop Pokegama Beach as a strictly residential district, and therefore the restriction was avail-

able to any of the lot owners as against their neighbors in the event of its breach.

■ The trial court held that the erection of the cabins or cottages by the defendants was not a violation of the restriction contained in the West deeds. We think the evidence is conclusively to the contrary and that the group of cottages or cabins was as much a violation of the clause as would have been the erection of a summer hotel. The fact that the cabins were separate structures did not change the reality that the defendants conducted a hostelry as a business and not merely the rental of summer cottages as residences. A group of ten cabins on one 50-foot lot conducted as rental property where overnight guests or guests for two or three days or by the week were registered and accommodated speaks for itself and is what is generally termed a tourist camp. The defendants themselves recognized this by keeping a register not only of the guests but of the cars as required by L. 1937, c. 186, 3 Mason Minn. St. 1940 Supp. §§ 10536-5 to 10536-8. They advertised the camp as "Boze Brothers Cabins." Moore v. Stevens, 90 Fla. 879, 106 So. 901, 43 A. L. R. 1127, and Deitrick v. Leadbetter, 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849, are in point.

■ We come to the proposition of laches, which was not pleaded in the original answer as a defense. At the close of the testimony the defendants proposed to amend their answer to set up this defense, but the court apparently did not rule on this proposal. The plaintiff did, however, state that in the event that it was granted "the record as it now stands would complete the plaintiff's case on the issue of laches and estoppel if such is an issue at this time in this case," to which the court replied, "Very well." While there are two lines of cases on the necessity of pleading the defense of laches and this court has apparently not committed itself to either, yet its utterances indicate that it takes the view that the defense need not necessarily be pleaded. Schmitt v. Hager, 88 Minn. 413, 416, 93 N. W. 110. The Supreme Court of the United States has taken this view. Sullivan v. Portland & Kennebec R. Co. 94 U. S. 806, 811, 24 L. ed. 324, where the court said:

"To let in the defence that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive, and refuse relief."

Courts of high standing have also taken this position. Suhr v. Lauterbach, 164 Cal. 591, 130 P. 2; Poulin v. Poulin, 60 R. I. 264, 197 A. 878; Coon v. Seymour, 71 Wis. 340, 37 N. W. 243.

■ In Briggs v. Buzzell, 164 Minn. 116, 204 N. W. 548, it was said that the pith and substance of the doctrine of laches is unreasonable delay in enforcing a known right, and this court has held that the practical question in each case is whether there has been such unreasonable delay in asserting a known right resulting in prejudice to others as would make it inequitable to grant the relief sought. Bausman v. Kelley, 38 Minn. 197, 36 N. W. 333, 8 A. S. R. 661; Lloyd v. Simons, 97 Minn. 315, 105 N. W. 902. The basis of the doctrine of laches is said to be public policy which requires for the peace of society the discouragement of stale demands. Brandes v. Carpenter, 68 Minn. 388, 390, 71 N. W. 402; Schmitt v. Hager, 88 Minn. 413, 415, 93 N. W. 110; Brockman v. Brockman, 133 Minn. 148, 152, 157 N. W. 1086; Mackall v. Casilear, 137 U. S. 556, 566, 11 S. Ct. 178, 34 L. ed. 776. In the case at bar we cannot see that the plaintiff could stand in any better position than her mother would had she not conveyed to the plaintiff. She and her mother had lived together upon their lots in the summers which they spent at Detroit Lake though occasionally they rented out their cottage during the summer. Plaintiff does not deny that she knew of the restrictions in the deeds or that she knew of the construction of these cabins, the last of which was constructed in 1936. She did not commence her suit to restrain the operation of the camp until 1938. It appears to us that the violation of a restriction of the kind contained in these deeds was one that called for immediate action on the part of the person entitled to enforce the restriction. Plaintiff contends that defendants cannot

avail themselves of the defense of laches because they had both constructive and actual knowledge of the restriction in the deeds from the Wests and knowingly violated it. It is defendants' claim that they took advice before erecting the cabins. If plaintiff's testimony had been accepted, it would appear that they took the position that the restriction was personal to the grantee and was not binding upon them even with notice of the restriction, which would put the case in a situation similar to that passed upon in Bauby v. Krasow, 107 Conn. 109, 139 A. 508, 57 A. L. R. 331, where the court relegated plaintiff to her action for damages on account of her delay in bringing the suit for injunction. "On the other hand one, who openly defies known rights, in the absence of anything to mislead him or to indicate assent or abandonment of intent to oppose on the part of others, is not in a position to urge as a bar failure to take the most instant conceivable resort to the courts." Stewart v. Finkelstone, 206 Mass. 28, 36, 92 N. E. 37, 39, 28 L.R.A.(N.S.) 634, 138 A. S. R. 370.

The difficulty with the plaintiff's situation is that the trial court found against her on the fact issue of warning to the defendants at the time they were erecting the cabins, and also on the question of laches; and, if there is sufficient evidence in the record to sustain the latter finding, equity will not afford her injunctive relief. Assuming that no warning was given to the defendants of plaintiff's or her mother's determination to stand upon their rights in connection with the restrictive clause, an inference that the defendants were justified in believing that the plaintiff and her mother acquiesced in their violation of the restriction and waived their rights thereunder might be drawn from the evidence. Such being the situation, the case falls within the rule laid down by the supreme court of Pennsylvania in Orne v. Fridenberg, 143 Pa. 487, 501, 22 A. 832, 833, 24 A. S. R. 567, quoting from 2 High, Injunctions, § 1159:

"In considering applications for relief by injunction against the breach of restrictive covenants contained in conveyances of real property, the courts require due diligence upon the part of the

plaintiff seeking the relief, and laches or acquiescence on his part in the violation of the restrictive covenant will ordinarily defeat his application. Indeed, equity requires the utmost diligence in this class of cases upon the part of him who invokes its preventive aid, and a slight degree of acquiescence is sufficient to defeat the application, since every relaxation which plaintiff permits in allowing erections to be made in violation of the covenant amounts pro tanto to a disaffirmance of the obligation. Where, therefore, plaintiff lies by for a period of four or five months, permitting defendants to go on with their erections in disregard of the covenant, he will be denied relief by injunction; * * * And, generally, whenever plaintiff stands idly by, and permits the erection complained of to be made, and expenses to be incurred therein, without objecting, his application for the aid of a court of equity comes too late, and will not be entertained. Thus, where purchasers of real estate have bought upon condition that they are to use the land for a specific purpose, and none other, they will not be restrained from using it for other purposes when plaintiff has permitted them to go on without objection, and to incur large expenses in the work proposed, no sufficient excuse being shown for the delay in invoking the aid of equity."

The plaintiff also relies on the statement of this court in Darelius v. Commonwealth Mtg. Co. 152 Minn. 128, 136, 188 N. W. 208, 211, where it was said, "there can be no estoppel as to facts equally known to both parties," citing Plummer v. Mold, 22 Minn. 15. In that case, which was a suit for rescission, the decision turned upon whether the party setting up the estoppel had been misled by the words or conduct of the other party, and the court concluded that that element was lacking in the case. In Plummer v. Mold, there was a similar holding where the party seeking to set up the estoppel was as well or better informed as to the facts than the other party. The question of laches arising out of acquiescence or waiver where the other party was engaged in making improvements was not involved in either case. In the case at bar the court might well have found against the defendants on the

question of notice, but there is sufficient evidence to support its finding of laches, and the order denying a new trial must be affirmed.

Affirmed.

PETERSON, JUSTICE (dissenting).

Plaintiff should not be barred by the delay. Generally, the statute of limitations governs equitable as well as legal actions. Where, as here, the delay is less than the statutory period, equity will enforce a claim unless the result would prejudice innocent parties. McRae v. Feigh, 143 Minn. 241, 173 N. W. 655. The time within which to bring a suit in equity is limited by due diligence in asserting a right only where there is no statute of limitations. Sweet v. Lowry, 123 Minn. 13, 142 N. W. 882, 47 L.R.A.(N.S.) 451.

Plaintiff's conduct was not culpable. It in no manner contributed to or caused defendants' violation of the covenant.

The defendants are not innocent parties. Their violation of the covenant was wrongful. The defense lacks equity altogether.

Leaving a party to an action to recover damages for breach of covenant in a case like this in effect denies him any remedy. The purpose of such covenants is to secure rights of peculiar value for which there is no adequate substitute. Specific performance of contracts is granted because damages awarded for a breach of the contract are not an adequate substitute for performance. Rights under a restrictive covenant are the same in kind as those specifically enforced in other cases. An award of damages is no substitute for the performance of the covenant. Many millions of dollars are invested in property in reliance on such restrictions, the observance of which it is conceived enhances the value, use, and enjoyment thereof. The price paid for a restrictive covenant is for its performance and not for damages for its breach. Restrictions against the construction of certain types of buildings, as well as their use and location, are to secure values and satisfaction from the use of property of a more or less aesthetic and purely personal nature—which are more important to those entitled to the protection of the restriction than any money award for a

breach could possibly be. Where such a covenant is violated the injured party should be allowed the full period of the statute of limitations within which to resort to any appropriate remedy, except where his own culpable conduct bars him of the right as against an innocent defendant. Since the plaintiff's delay was not culpable and defendants were not innocent parties, I think that the delay should not bar plaintiff.