# MORRIS M. STRAUSS AND OTHERS v. C. M. GINZBERG AND ANOTHER.[1]

June 30, 1944.

No. 33,771.

[1]Reported in 15 N. W. (2d) 130.

*Louis H. Joss,* for appellant.
*H. Z. Mendow,* for respondents.

MAGNEY, JUSTICE.

Action for an injunction restraining defendants from altering certain premises located in Homewood Addition, Minneapolis, for the purpose of making them suitable for the conducting of religious services by a religious organization, and from conducting religious services for a religious organization on the premises.

Plaintiffs are the owners of certain lots in Homewood Addition in the city of Minneapolis. Defendant Travelers Insurance Company, Inc. is the owner of three lots in the same addition, subject to a contract for deed to defendant C. M. Ginzberg. Subsequent to the filing of the plat, the owners incorporated in the instrument of conveyance of every lot, with the exception of certain lots hereinafter referred to, the following restrictive covenant:

"This conveyance is made upon the following conditions only: That when the premises herein contained are improved, it shall be by the erection of one new residence building costing not less than $4,000.00 * * *. In the event that the above conditions or any of them are broken by the grantee herein or their heirs or assigns, then and in that case this conveyance shall be void."

This restriction was not contained in the deed conveying two lots in the extreme northeast corner of the addition (now used for a gas station) nor in four lots occupied by two churches, nor in 23½ lots used as a public school playground. Ginzberg, a duly ordained rabbi, admits his intention to hold religious services of the orthodox Jewish faith on the premises in question and to alter the residence located on the premises for this purpose. In addition to these facts, the trial court found:

"* * * All the persons purchasing lots in said Addition from time to time purchased them with the knowledge that all the lots

in the Addition were or were to be subject to the building restrictions above referred to and relied on such restrictions and upon the character of the neighborhood as being a restricted residence area, subject only to the excepted tracts hereinabove described."

It also appears from the record that as early as 1917 and as late as 1940 the same restrictive covenant has been incorporated into the conveyances of lots in the addition. The trial court enjoined defendants as prayed for in the complaint. Defendant Ginzberg appeals from an order denying his motion for amended findings or for a new trial.

■ The main question presented on this appeal is whether the restrictive covenant here involved is a limitation upon use or merely a limitation upon construction. Ginzberg purchased lots upon which was located a residence building which, in all respects, was in conformity with the building restriction. He contends that the restriction in the covenant applies only to the nature of the improvement, and that it does not prevent the use of the premises for religious worship by a religious organization or prevent him from remodeling the same for such purpose. The precise question has not arisen in this state. It has been considered and determined in other jurisdictions. In 26 C. J. S., Deeds, § 164(a), we find this statement of the law:

"A restrictive covenant against the erection of certain types of building limits the use as well as the construction of the building."

And in 14 Am. Jur., Covenants, Conditions and Restrictions, § 246, it is said:

"A covenant against any building except a 'dwelling house,' or 'one dwelling house,' a 'single dwelling,' or a 'dwelling' is generally interpreted to forbid the erection of any building except one designated for a single family; * * * Such a restriction defines the use to which the dwelling shall be put, and not simply its form, * * *."

Homewood Addition was developed under a general plan. It has 213 single-family residences, each occupying one and one-half to

three lots restricted in the same manner as the ones in question. The total number of lots in the addition is 410. Of this number, four are used for church buildings, two for a filling station, and 23½ for a school playground. Thus, about 93 percent of the lots are restricted. The gasoline station was built over ten years ago, the churches over 20 years ago, and the playground has been used over 13 years.

The Minnesota cases tend to support the contention of plaintiffs. In Cantieny v. Boze, 209 Minn. 407, 409, 296 N. W. 491, 492, this court stated:

"Whenever land is developed under a general plan, reasonably restrictive covenants which appear in deeds to all lots sold are enforceable alike by the vendor and by the vendees and by their successors in title. Velie v. Richardson, 126 Minn. 334, 148 N. W. 286; Godley v. Weisman, 133 Minn. 1, 157 N. W. 711, 158 N. W. 333, L. R. A. 1917A, 333; Deitrick v. Leadbetter, 175 Va. 170, 8 S. E. (2d) 276, 127 A. L. R. 849."

In Velie v. Richardson, 126 Minn. 334, 336, 148 N. W. 286, 287, *supra*, where defendant had begun the erection of an icehouse on his lot, wherein to conduct an ice business, Mr. Justice Holt, speaking for the court, said:

"* * * We think the complaint fairly construed does show that the owners of a tract of land having platted the same into many lots with the intention of attracting purchasers, formed and carried out a plan to sell the lots subject to covenants restricting the lots to homes of a certain character. The inference is reasonable that the covenant was exacted not only to enable the owners the more readily to dispose of the lots, but also that it should be for the benefit of all purchasers, so that they might be able to dwell in a strictly residential district. It is plain that such restrictions appeal to many in selecting or buying property. Every grantee in accepting a deed with a similar restriction ought to know that thereby a right is reserved in behalf of others who may be so situated as to be entitled to the benefits of the covenant. * * * The

covenant inuring to plaintiffs' benefit, they have a right which equity will protect, by injunction if necessary."

In the Velie case, there were 128 lots in the tract, of which 90 had been sold under deed or agreement with restrictive covenants. The court held that the fact that two lots out of the tract had been sold without the restrictive covenant, and, that as to two more the restriction was different, was not conclusive that the owner did not sell subject to a general plan of restriction which inured to the benefit of every purchaser. So it may be said here that the fact that certain lots were sold without restrictions for church and playground purposes does not show conclusively that the owner did not sell subject to a general plan of restriction which inured to the benefit of every purchaser. In fact, it may be strong evidence that he did sell subject to a general plan of restriction. The only other two unrestricted lots used for a filling station are located in an extreme corner of the addition. The sale of lots in the addition began prior to 1917, and there has been no deviation, except as noted, from the general plan and no departure from the building restriction as to each tract and lot, and all purchasers have bought with knowledge. Where a scheme or plan of development is contemplated by the grantor, the language of the covenant will be given such effect as will carry out the intent of the grantor and those who purchased with the restriction in their chain of title. 14 Am. Jur., Covenants, Conditions and Restrictions, § 211. In Klapproth v. Grininger, 162 Minn. 488, 490, 203 N. W. 418; 419, 39 A. L. R. 1080, this court said:

"While covenants imposing restrictions upon the use of property will not be enlarged by construction, they will be given the full force and effect intended by the parties who created them, and where the language used is clear and unambiguous it will be given its obvious meaning."

In the instant case, the wording of the restriction goes to the construction of the building to be placed on the lot. It would be unreasonable to say that it does not also cover its use. If, after a

residence has been constructed on a lot with a restrictive covenant in the deed, the owner could thereafter use the building for a millinery store, restaurant, beauty shop, antique shop, or numerous other uses to which, but for the prohibitions in a zoning ordinance, it would be suitable and available, the covenant would be of little value and the general plan of restriction, which would otherwise inure to the benefit of all purchasers, would be circumvented.

In the case of Holderness v. Central States Finance Corp. 241 Mich. 604, 607, 217 N. W. 764, 765, where the situation was quite similar to the one at bar, the court clearly stated the proposition as follows:

"* * * In light of the fact that these restrictions have been uniformly embodied by the subdivider in his conveyance of each lot, and the admission of these defendants that the whole development of the addition has been in conformity to the restrictions, it would be a perversion of the English language to hold that the restrictions applied only as 'building restrictions' and not as restrictions governing the use of the property. It would indeed be useless to provide that 'no structure shall be *built* on any lot except for dwelling house purposes' and then permit it to be used forthwith as a store or factory."

In Boston-Edison Protective Assn. v. Goodlove, 248 Mich. 625, 630, 227 N. W. 772, 773, involving provisions similar to those here, the property had been improved as a residence. In holding that it could not be further improved by a building intended to house a doctor's office, the court said:

"* * * A covenant restricting the erection of any building, except for dwelling house purposes, applies to the use as well as to the character of the building."

The same was held in Bohm v. Rogoff, 256 Mich. 199, 239 N. W. 320, and Nerrerter v. Little, 258 Mich. 462, 243 N. W. 25. In the Bohm case the court said (256 Mich. 201, 239 N. W. 321):

"It avails defendants nothing to contend that the restriction applies only to the kind of buildings to be erected and not to the

use of the property. This contention runs counter to the manifest intent of the restriction and would fritter away its benefit."

In 14 Am. Jur., Covenants, Conditions and Restrictions, § 243, we find this statement:

"'* * * A covenant to build a house of a certain kind has been held to be violated by the conversion of a structure already built according to the covenant into one that violates it.'"

*Id.* § 249, states:

"Whether a covenant against the erection of a house of a certain character prevents the alteration of a house erected according to the covenant to one which violates it has been variously answered. It has been held that such covenant does prevent the alteration of a building already complying with the covenant."

■ Defendant also claims that because several tracts, that is, those used for the two churches, the school playground, and the filling station, are not restricted to residential purposes, and that all the owners knew, or should have known, that such tracts were not so restricted, such departure indicated an intention on the part of the original owner to confine the restriction merely to the character of the original improvement, and that he did not intend to restrict the subsequent use of the property. It is our opinion that the permitted use of these tracts for other than residential purposes does not indicate any intention on the part of the original owner to confine the restriction merely to the character of the original improvement and not the subsequent use of the property. In the Holderness case, 241 Mich. 604, 217 N. W. 764, *supra,* the court expressed the opinion that the very fact that there were some exceptions emphasized and strengthened the restrictions rather than weakened them. In Sayles v. Hall, 210 Mass. 281, 96 N. E. 712, 41 L.R.A.(N.S.) 625, Ann. Cas. 1912D, 475, a restrictive covenant had been violated by the owners of three out of 44 dwellings, all subject to the same restriction. It was held that such fact did not show such a change in the neghborhood as to avoid the restriction.

The facts in the case before us do not show that there has been such a change in the character of the neighborhood, acquiesced in by plaintiffs, that equity should not enforce the restriction.

■ April 7, 1924, the city of Minneapolis adopted a general zoning ordinance. Homewood was zoned as a residential district. Section 3 of that ordinance provides that in a residential district a building may be used, erected, or structurally altered for private dwellings, for churches and schools accessory thereto, and for public schools. Defendant claims that under the zoning ordinance he may use his premises for religious purposes and alter them to make them more suitable for such purposes; therefore, that the restrictive covenant in his deed is inoperative. The zoning ordinance was adopted after many of the restricted covenants were already in effect and after that on the Ginzberg property was in effect. The zoning ordinance cannot affect the obligation created by such restrictions and cannot impair the contractual obligation so created. Zoning ordinances, if less stringent, do not diminish the legal effect of private restrictions. Smith, Zoning Law and Practice, § 3; Metzenbaum, Law of Zoning, p. 282(d).

Order affirmed.