BOSTON-EDISON PROTECTIVE ASSOCIATION *v.* TEMPLE OF LIGHT.

Covenants—Residence Restrictions—Astrology.

Decree granting injunction permitting use of premises in subdivision for Sunday religious services and prayer meetings at which attendance was limited to 30 persons exclusive of defendant astrologer and wife notwithstanding restrictions limited use to single private residence and necessary outbuildings is modified to eliminate provision for such permissive use and to include provision enjoining defendants from carrying on the practice or business of astrology or reading horoscopes or giving or permitting horoscopic readings on the premises under any guise.

Appeal from Wayne; Toms (Robert M.), J. Submitted June 7, 1944. (Docket No. 17, Calendar No. 42,732.) Decided November 30, 1944. Rehearing denied January 11, 1945.

Bill by Boston-Edison Protective Association, a Michigan corporation, and another against Temple of Light, a Michigan ecclesiastical corporation, and others to restrain violation of use restrictions. Decree for plaintiffs. Plaintiffs appeal. Modified and affirmed.

*Bishop & Bishop,* for plaintiffs.

Reid, J. This bill was filed to enjoin violation of certain building and use restrictions in Voight Park subdivision in Detroit, which includes property fronting on Boston boulevard and Edison avenue from Woodward to Linwood avenues in said city. The restrictions limit the use of the property in question in this case to a single private residence and the necessary outbuildings.

The defendant Temple of Light is a Michigan ecclesiastical corporation of which the defendant O. James Crews is pastor. Crews has been minister of the Temple of Light since its incorporation in 1936. The property in question, the former Henry Ford home, was purchased on land contract by Crews and the Temple of Light in 1941, since which time it has been occupied by defendant Crews and his family as a residence. According to the testimony of Crews, services or "meetings" have been held regularly in the home almost continuously since November, 1941, on Thursday and Sunday evenings, to which admission was gained only by his invitation. These meetings were restricted to invited people, by having men stationed at the doors admitting only those who had been invited by Crews. He had control of the premises at all times.

Defendant Crews became a devotee of the practice of astrology and horoscope reading before 1932. He testified that since that time he has continuously

studied the reading of horoscopes; that at one time he had a bookstore .in Detroit "in which we had almost every kind of occult book that we could—that I could lay my hands on. Books from India. * * * That book store which was called the House of Knowledge lasted about a year and a half, until 1936. I was constantly broadcasting over local radio stations as Voice of Knowledge and O. James Crews, Voice of the Planets."

The building involved in this case has 14 rooms. Defendant Crews had from 80 to 100 folding chairs in the building which were set up for his meetings on Thursday and Sunday nights. He sent out on the average about 200 invitations for almost every "meeting." Those who were admitted were required to have identification cards. The public in general was not allowed admission to these semi-weekly meetings. They were screened from outside view by heavy curtains. Obviously the premises were used by defendant Crews for a combination of religious and business purposes.

He testified:

"I have practiced the business or vocation of reading horoscopes for pay. I have done that since I have lived at 140 Edison avenue (the premises in question)."

This reading of horoscopes was done by the use of charts, tables of the solar system and the zodiacal heavens, time of birth, blackboards, a book of ephemeral places and the sidereal time as calculated at Greenwich at noon, the making of mathematical calculations, proper placing of the signs of the zodiac, et cetera. Crews testified that he checked the accuracy of his customers' charts "by telling you your past life, enough for you to tell it is true." His fee for all this varied from $5 to as high as

$150. For his steady customers, the members of the "church," there was no charge. Crews admitted he had read the horoscopes of at least 1,200 people on the premises in question. In addition, he conducted prayer and religious services, performed marriages, and held trustee meetings, on the premises.

The trial judge found that the defendants had violated the restrictions and granted an injunctive decree, from which plaintiffs appeal as affording insufficient relief. Among other things, the decree permitted religious services and prayer meetings to be held regularly on the premises on Sunday evenings, attended by not to exceed 30 persons exclusive of defendant Crews and his wife. Under the circumstances of this case, we consider that the meetings thus permitted are a violation of the restrictions and that the decree appealed from should be amended. A decree may be entered eliminating the permission to use the premises for services or meetings on Sunday evenings, and the decree shall enjoin the defendants from in any manner carrying on the practice or business of astrology or reading horoscopes or giving or permitting horoscopic readings on the premises under any guise, either to members of the "Temple of Light" or to any other person. The decree is otherwise affirmed and shall not be construed as permitting by implication the carrying on of any activity inconsistent with the spirit of the restrictions. Costs are awarded to plaintiffs.

NORTH, C. J., and STARR, WIEST, BUSHNELL, SHARPE, and BOYLES, JJ., concurred. BUTZEL, J., did not sit.