## Epstein et ux. et al. v. Rabinowitz et ux.

*M. H. Morgan*, for plaintiffs.
*A. Wernick*, for defendants.

SMITH, P. J., August 8, 1952.—This matter comes before the court on preliminary objections submitted by plaintiffs to defendants' answer and new matter. Plaintiffs filed a bill in equity on behalf of themselves and others wherein they aver that defendants propose to use the premises erected on a lot situate on the northwest corner of Fifty-sixth Street and Woodcrest Avenue, Philadelphia, owned by defendants, Jacob Rabinowitz and Bella, his wife, as a synagogue, religious school, and other purposes related thereto, and as a multiple-family dwelling house contrary to a building restriction covering this property as is set forth in a deed, dated October 14, 1947, from Albert Pepper Gerhard et ux. to David Magen et al., and recorded in the Office for the Recording of Deeds in Philadelphia County in Deed Book J. M. H. 2615, page 325, etc. The restriction, inter alia, provides:

"That no building or buildings to be erected hereon shall at any time hereafter forever be used or occupied by any person or persons other than those of the Caucasian Race. . . . That the buildings to be erected thereon shall be none other than private dwelling houses except that there may be erected a private garage under the rear of each house. . . . That no building or buildings to be erected thereon shall at any time hereafter be changed or altered into or used for any other purpose than above designated."

Plaintiffs and defendants by divers conveyances are successors in title of David Magen et al., and accordingly hold title to their respective premises under and subject to the restrictions so created under deed of October 14, 1947, as recorded in Deed Book J. M. H. 2615, page 325, etc.

The answer of defendants represents that defendants do not propose using their premises as a religious school and other uses related thereto. They further deny that they propose to make alterations on the

premises which may be necessary for the purposes stated in the paragraph. The answer admits that male defendant does propose to use the basement of the premises as a House of Prayer under conditions which will be lawfully outlined in the new matter. In the new matter, paragraph 23, it is stated that "the defendant, Jacob Rabinowitz, is a Hasidic Rabbi, being the leader of a sect or group of religious Jews known as Hasidim." Other paragraphs of the new matter explain what Hasidim is; its origin; its founder; the rabbinical background of defendant, Jacob Rabinowitz; the fact that defendant is a descendant of a long line of rabbis of this particular faith; when defendant came to this country; and that according to the tenets of his faith he is obliged to commune with God through prayers in the presence of at least 10 male Hasidism, and on certain days of the week and particularly on the Sabbath he must read certain portions of the Holy Scriptures; and that in order to carry out the tenets of his faith he is preparing to place a number of individual chairs in the basement and to conduct this form of communion with God through prayers. The questions raised therefore are the following:

1. Where a Hasidic Rabbi in accordance with the tenets of his faith holds communion with God through prayer in the presence of 10 male Hasidism in the basement of his home without changing any of the physical structure of his home, does this constitute a violation of a restriction in the deed that the premises should be used as a private dwelling house?

2. Are plaintiffs guilty of laches and coming into court with unclean hands?

3. Plaintiffs contend that no facts stated in the answer and new matter constitute an equitable defense to the bill of complaint, and since no affirmative relief is prayed for, should the new matter be stricken off?

It seems to us that the facts set forth in the new

matter, attached to defendants' answer, are largely descriptive and historical and that paragraph 27, where it is stated that in order to carry out the tenets of his faith he is preparing to place a number of individual chairs in the basement of his home to conduct this form of communion with God through prayers, might well be considered as a part of paragraph 7 of the answer. The primary question is whether these defendants on their premises intend to occupy it in such a way as to come within the restrictions of the deed of 1947, supra. In the pleadings these plaintiffs are seeking a summary judgment. Such judgment will not be granted where they indicate that there should be a broad inquiry into the facts. In the case of Philadelphia v. Holmes Elec. Protective Co., 347 Pa. 69, 73, the court held:

"It is well settled that the plaintiff shall not have judgment for want of a sufficient affidavit of defense and that a defendant shall not have judgment on a statutory demurrer unless the case is clear. . . . The reason for the rule is that a party shall not be deprived of jury trial where essential facts are in dispute."

It seems to us that this case should be tried on its merits and that testimony should be taken to determine if the restriction in the deed is in fact violated or will be violated by the actions of defendants.

As long as the use of defendants' house does not lose its character as a single-family dwelling for himself and his family and does not become a building where the aspect of a single-family dwelling is only incidental, we do not think that the restriction in the deed applies. A rabbi may certainly commune with God in his home and in the presence of a certain group of Jews of his particular faith. The moment that this House of Prayer is so used that it is manifestly a House of Prayer and the dwelling part thereof is only incidental, then the restriction would attach. De-

fendants purchased this property with knowledge of the restriction and they must abide by its terms, but we believe that its restriction should have a liberal interpretation. It is a familiar rule of law that restrictive covenants are to be construed most strictly against the covenant. The restriction must be given a construction within reason and not beyond reason.

"The restriction is a lawful one and enforceable at law and in equity though it is not favored by the law, being an interference with the owner's free and full use of his property. Nevertheless if the intention of the grantor who first imposed it as a condition of the conveyance to his grantee clearly appears, it will be enforced but all doubts must be resolved against it in favor of a free and unrestricted use of property. Nothing will be regarded as a violation of it that is not in plain disregard of its express words. There are no implied rights arising from it which courts will recognize and covenants like it are not to be extended by implication": Crofton v. St. Clement's Church, 208 Pa. 209, 212; St. Andrew's Lutheran Church's Appeal, 67 Pa. 512. Thus if the use of his dwelling as a place where, with 10 or more, he may pray is only incidental to its use, we do not see where he is destroying the restriction of his deed. Dwelling houses in the past have often been used for prayer by a divine person and his friends without in any way taking the proportions of a church or synagogue and losing the substantial aspects of a dwelling. We have searched the decisions of this Commonwealth and other States to determine whether this matter has ever appeared before the courts. There is no case like this one in the Commonwealth of Pennsylvania. Some of the aspects of this case have arisen in other jurisdictions. The case most nearly like the one before us is the case of Hunter Tract Improvement Co. v. Corporation of the Catholic Bishop of Misqually, 98 Wash. 112. There a

restriction in a deed provided that the properties could only consist of single-family dwellings and could be used for residential purposes only. The restriction there is similar to the one in the case at bar. One of the residences was purchased for and occupied by a Catholic sisterhood known as Norulines, consisting of 12 or 15 women who dressed in a garb similar to that used by other Catholic sisterhoods. In the living room of the house a small altar was erected and every morning a priest came into the house to conduct religious services. Morris, J., affirming the case of Jones v. Williams, 56 Wash. 588, held:

"The fact that religious services are held in the house every morning by a priest or that a small altar has been erected does not take away from these premises their character as the home or residence of the women who live there. We may take notice of the fact that religious services are held in many residences, that singing or chanting of a religious nature may be heard in family homes, and that, to those who are religiously inclined, the courts would hardly say, 'If you have a clergyman of your religious faith visit your home every morning and hold services with you your home loses its character as a place of residence and becomes a religious institution.'"

There is no case that we can find that is as much like the case at bar as the above case. Defendant merely proposes to erect a small Holy Ark in his basement in which shall be placed a Holy Scroll, a small pulpit and a small table on which the scroll shall be placed, and 10 or more chairs for individuals necessary to make the ceremony effective. This is the question which is primarily raised by the preliminary objections and it is the one that should be heard by a chancellor. The cases submitted by plaintiffs have only some resemblance to the facts at issue and are not controlling. In the case of Strauss et al. v.

Ginzberg, 218 Minn. 57, 15 N. W. 2d 130, the question there seems to be whether or not a defendant could so improve his property that it might be used for religious worship. The court on page 59 said:

"The main question presented on this appeal is whether the restrictive covenant here involved is a limitation upon·use or merely a limitation upon construction. . . . He [Ginzberg] contends that the restriction in the covenant applies only to the nature of the improvement, and that it does not prevent the use of the premises for religious worship by a religious organization or prevent him from remodeling the same for such purpose."

The facts indicate that the action was for an injunction restricting the altering of certain premises for the purpose of making them suitable for the conducting of religious services by a religious organization.

In the case of Boston-Edison Protective Association v. Temple of Light, 310 Mich. 48, 16 N. W. 2d 662, the facts disclose that defendant used the premises more for commercial use rather than religious, and the religious use was only incidental to commercial use. The report failed to show how many of the rooms were used for the commercial purposes of reading horoscopes of persons. There were fees charged and defendant admitted reading a number of horoscopes on the premises.

None of these cases seems to be controlling as to the specific question of whether the occupant of a private building is violating the restriction when he worships God according to the tenets of his faith and does not conduct public services. However, if the facts disclose that defendant will use these premises to conduct public services, we would enforce the restriction. This conclusion was reached in the case of Matthews et al. v. First Christian Church of St. Louis, 355 Mo. 627, 197 S. W. 2d 617, where a large three-story residence

in the middle of a restricted block was used as a church where a number of people congregated and the street was filled with a number of cars. The question there raised by other residents was whether there were certain waivers and whether certain zoning laws affected the situation. In all of the cases submitted by plaintiffs, the matter was not disposed of· until after full hearing on the merits of the facts.

Plaintiffs and defendants submitted definitions of the word "synagogue" which we do not think is controlling at this time. It is the use of the premises which must be determined after a hearing and this is the essential fact which is in dispute. The fact that no affirmative defense was asked in the new matter under the pleadings of this case should not play too important a rôle. In 8 Standard Pa. Practice 218, it was stated that an objection going to the sufficiency of the defense is not properly the subject of preliminary objections to the answer: Keane et al. v. Todd et al., 61 Montg. 245, 247. Also in Equity Rule 52 it is provided that the filing of a new matter where affirmative relief is sought or where under new matter facts as may tend to invalidate an anticipated defense on plaintiff's part may be set up. As it was said before, the new matter contained facts that are purely descriptive or historical and constitutes a defense to which no plaintiffs' reply is required. The question there is purely a simple one: Will the conduct of defendant in the use of his premises for religious prayer, as in his answer he avers he will do, change the character of the premises to such a degree as to infringe on the restriction of his deed. While they may not be controlling in cases involving private restrictions in deeds, there are a number of cases which arose in zoning matters in the Commonwealth of Pennsylvania where the court considered the effect of the use of a home for divine worship. Mr. Chief Justice Maxey in Overbrook Farms Club et al.

v. Zoning Board of Adjustment, 351 Pa. 77, 80, said:

"The idea of a home and a church being under one roof is not shocking to either the practical or the aesthetic sense of a normal human being. A home and a place of divine worship are not necessarily mutually exclusive. The formal worship of God, in family homes, was much more widely practiced in this country in a very creditable earlier era than it is in this more materialistic age, and such worship was not always confined to the immediate family. Very frequently many neighbors joined in the worship. There are well known and respected religious sects in this state and country which erect no church but conduct divine worship on the several Sabbaths of the year in the respective homes of the communicants."

Mr. Chief Justice Maxey in Kurman et al v. Zoning Board of Adjustment et al., 351 Pa. 247, 248, said:

"The Philadelphia Zoning Ordinance of August 10, 1933, provides in section 7 that buildings in an 'A' residential district may be used, inter alia, as '(1) Detached single-family dwellings . . . (2) Churches, chapels or other places of worship.' Combinations of these two uses are neither listed nor expressly prohibited, and should a building meet all the requirements for both types of uses as set forth elsewhere in the ordinance, no reason appears why such a building could not be used for both purposes."

Mr. Justice Patterson in Floersheim Appeal, 348 Pa. 98, 100, said:

"The definition of a 'One Family Dwelling' is broad. A building 'designed for' one family may very readily be used as a 'church'."

We are of the opinion that these facts had better be presented and a full disclosure made so that this matter may be properly adjudicated.

And now, to wit, August 8, 1952, the preliminary objections of plaintiffs are not sustained.