## CIRCUIT COURT OF ALBEMARLE COUNTY

Alice Batten et al.

v.

River Heights Assoc. et al.

May 10, 2002

Case No. (Chancery) 99-11,417

BY JUDGE PAUL M. PEATROSS, JR.

This case comes before the Court on a Bill of Complaint for Declaratory Judgment pursuant to Virginia Code § 8.01-184 et. seq., as amended. The Complainants, nine residents and property owners of Carrsbrook Subdivision in Albemarle County, Virginia, seek a judgment declaring certain restrictive covenants enforceable to prevent commercial development within their subdivision. Respondents each own one or more lots within the Carrsbrook Subdivision. Complainants allege that Respondents' lots, like all lots in Carrsbrook, are bound by residential restrictive covenants that prohibit the use of the property for any type of commercial activity. Fearing that the Respondents were planning to build commercial offices on their Carrsbrook lots, Complainants filed this suit to declare the property bound by the residential restrictive covenants. In response, Respondents claim that the covenants do not apply to their lots. In the alternative, Respondents allege that, even if their lots are burdened by the restrictive covenants, radical changes in circumstances have occurred since the covenants were put in place which render the covenants unenforceable as to these specific lots.

At the conclusion of a two-day bench trial, the Court took the matter under advisement in order to receive post-trial memoranda from the parties. After reviewing the memoranda, the Court now holds that the residential restrictive covenants do apply to each of the lots in question and there has not been such a radical change of circumstances as to invalidate the covenants.

## Brief Summary of Facts

Respondents' lots are located in the rear of the subdivision, fronting Route 29. Specifically, Respondent River Heights owns Lot 1, Section C, of the subdivision, which it acquired in 1998. Respondent First Gold Leaf Land Trust owns Lot 1, Section E, acquired in 1986. Respondent S-V Associates currently owns Lots 2C and 2D, Section C, which it acquired in 1978. None of Respondents' lots contain any structural improvements.

Wendall W. Wood is the beneficial owner of Gold Leaf Land Trust. He and his wife, Marlene, are beneficial owners of River Heights Associates, Limited Partnership, and Mr. Wood is a limited partner. S-V Associates is a general partnership, and Mr. Wood is a general partner.

Lot 1, Section E, owned by First Gold Leaf, was purchased by Wendall W. Wood on October 12, 1961. Wendall W. Wood and his wife, Marlene C. Wood, conveyed this property to S-V Associates, a general partnership, on November 13, 1978. On May 20, 1986, S-V Associates conveyed this property to First Gold Leaf.

Lot 1, Section C, owned by River Heights, was not owned by Wendall W. Wood or any of his entities prior to 1998.

Lots 2C and 2D, Section C, owned by S-V Associates, were conveyed to Wendall W. Wood by deed from Charles William Hurt and his wife on December 7, 1968. Mr. Wood and his wife conveyed these lots to S-V Associates in November 1978.

The Complainants introduced deeds at trial indicating that each of the Respondents' lots were subject to restrictive covenants at the time Respondents purchased them.[1] The covenants essentially stated that the lots were for residential use only, and commercial use of any type was expressly prohibited. According to the Complainants, all of the Carrsbrook lots were bound by these residential restrictive covenants as part of a general plan to develop a residential neighborhood. When the subdivision was subdivided into parcels in 1959, the residential restrictive covenants were recorded in Deed Book 348 at page 235. Complainants allege that the covenants must be enforced to preserve the character and quality of the neighborhood. Specifically, the Complainants testified that they will be injured by commercial development of the Respondents' property due to increased

---

[1] Rick Carter, an attorney, testified for the Complainants that chain of title to the properties indicated the restrictive covenants applied. Ernest Flynn, also an attorney, testified that the restrictive covenant applied to the lots in question based on a title examination he performed.

noise, light, and traffic. Complainants also allege that their property will decrease in financial value if commercial development is permitted, especially the value of the lots that border Respondents' lots.

Claiming that the restrictive covenants do not apply to their Lots 2C and 2D, Respondent S-V Associates introduced evidence of a restriction on a plat attached to several instruments recorded in 1960 and 1961 among the Land Records. The restriction stated "Lots 1 and 2 restricted to non access on Rt. 29 if lots are used for residential purposes." Larry McElwain testified for the Respondents and stated that this language contained in the restriction (inserted by the subdivider of Carrsbrook one year after the original covenants were imposed) indicates that commercial uses of Respondents' lots are to be allowed. Respondents also introduced evidence that Lots 2C and 2D currently have no access to the residential roads within Carrsbrook. Because of this, and due to the restriction limiting access to Rt. 29, there is no access to these lots if developed residentially.

Respondents also introduced evidence to show that their property would be rendered valueless if limited to residential use. In 1969 as part of a comprehensive zoning of the entire County of Albemarle, the four parcels at issue were zoned to the B-1 zoning district, except for the western portion of Lot 1, which remained residential. In 1980, the County updated its Zoning Ordinance and again zoned all four parcels as commercial with the exception of the western portion of Lot 1. Unless the zoning ordinance could be amended, therefore, the property could not be developed commercially or residentially. A witness also testified for the Respondents that the lots at issue were substantially more valuable if designated as commercial rather than residential.

It is also clear from the evidence presented at trial that the rear area of Carrsbrook abutting Rt. 29 has significantly changed since 1959. At that time, Rt. 29 was a two-lane road lined with residences and small businesses. Today, Rt. 29 is eight to ten lanes wide and consists entirely of commercial businesses, shopping centers, restaurants, and hotels. Respondents did not introduce any evidence of change within the neighborhood of Carrsbrook itself.

## Discussion of Law and Application

Respondents assert that the restrictive covenants in this case do not apply to Lot 1, Section C, and Lots 2C and 2D. In support of this claim, Respondents point to the restrictive note which first appeared on a May 1960 plat that states "Lots 1 and 2 restricted to non-access on Route 29 if lots are

used for residential purposes." According to Respondents, this language indicates that commercial uses are to be allowed on the subject properties. The Court does not agree.

The restrictive note on the plat does not eliminate residential use of the property. It only restricts access for residential use to Route 29. If access were acquired to Indian Springs Road, residential use was, and is, still possible with any necessary zoning change after 1969. There is no ambiguity resulting in loss by law of the residential restriction.

Respondents also argue that the restrictive covenants at issue here should not apply to the subject properties because the conditions regarding the Respondents' properties have changed to defeat the purpose of the restrictions. The Court does not find that conditions have changed within the neighborhood so as to defeat the purpose or benefits of the restrictive covenants; consequently, the covenants will be enforced.

The standard for when changed conditions have defeated the purpose of restrictive covenants was first established in *Deitrick v. Leadbetter*, 175 Va. 170, 8 S.E.2d 276 (1940), in which several neighbors sued a fellow neighbor to enjoin her from using her residence as a tourist home in violation of a "residential use only" restrictive covenant. See *id.* at 172. The trial court rejected the defendant's argument that changed conditions had defeated the purpose of the restriction and enjoined the defendant from using her home as a business. See *id.* On appeal, the Supreme Court of Virginia affirmed the lower court and set forth the following test regarding the continued enforcement of restrictive covenants due to a change in conditions: "No hard and fast rule can be laid down as to when changed conditions have defeated the purpose of restrictions, but it can be safely asserted the changes must be so radical as practically to destroy the essential objects and purposes of the agreement." *Id.* at 177 (internal citations omitted).

As evidence of change, the defendant in *Deitrick* pointed to increased traffic on Chamberlayne Avenue, a road abutting her lot and the edge of the neighborhood in question. See *id.* Changes also consisted of other homes within the neighborhood being used as tourist homes, a furnished apartment, and a duplex home, all in violation of the restrictive covenant. See *id.* Notwithstanding these changes within the neighborhood itself, the Deitrick court found that the essential character of the neighborhood had not changed at all; it was still "preeminently a residential district." *Id.* Because the covenant still served its original purpose, the court upheld the injunction. See *id.*

In *Booker v. Old Dominion Land Co.*, 188 Va. 143, 49 S.E.2d 314 (1948), the plaintiffs brought suit for declaratory judgment seeking the court to remove a residential restrictive covenant from their property, a lot they

owned that was part of a neighborhood located near Newport News. See *id.* at 146. Seeking to build a restaurant on their property, the plaintiffs argued that a radical change in the neighborhood defeated the purpose of the restriction and rendered its enforcement inequitable and oppressive. See *id.* at 148. As evidence of change, the plaintiffs established the following: (1) a zipper factory operated near the neighborhood, (2) a hard surface road now ran through the neighborhood leading to the factory, (3) Route 168, which all lots abutted, had been turned into a four-lane highway, and (4) a large shopping center and skating rink had been constructed near the neighborhood. See id. at 149. Plaintiffs also introduced testimony that their property would be more valuable if designated as commercial and that the lots were no longer desirable for residential use. See *id.* at 150. The trial court rejected the plaintiffs' arguments and granted the defendants' motion to dismiss. See *id.* at 145.

On appeal, the Supreme Court of Virginia affirmed the trial court, applying the general rule: "if a radical change takes place in the whole neighborhood so as to defeat the purpose of the restrictions and render their enforcement inequitable and oppressive, equity will not compel observance of them by injunction, but will leave the complaining party to his remedy at law." *Id.* at 148, 149 (emphasis added). The court held that the changes put forth by the plaintiffs were a natural result of population growth. See *id.* at 150. The purpose of the restrictive covenants was to preserve the neighborhood as a residential section, and none of the changes introduced by the plaintiffs refute that the subdivision has been developed exactly in accord with that purpose. See *id.*

The *Booker* court refused to give any weight to the testimony that the land was more valuable as commercial property rather than residential, stating that "the great increment in the value of the land of the [plaintiffs] which will arise from refusal to enforce this restriction is of slight if any consequence." *Id.* at 152 (internal citations omitted). Indeed, the court stated that "the very purpose of the restriction is to prevent the property from being converted to business use if it should become more valuable for that use." *Id.* at 155. The court noted that the defendants, several homeowners in the neighborhood who had purchased the land in reliance on the restrictive covenants, would still benefit from the enforcement of the restrictions. See *id.* at 152. Courts in equity should not set aside covenants that were voluntarily made, when to do so would enrich the covenantor and injure the covenantee. See *id.*

The third Virginia case that is central to issue of changed conditions is *Ault v. Shipley*, 189 Va. 69, 52 S.E.2d 56 (1949). In *Ault*, homeowners in a Bristol subdivision brought suit to enjoin defendants from building a

shopping center on property located within the subdivision in violation of a residential restrictive covenant. See *id.* at 71. Defendants argued that the covenants should not be applied due to a change in conditions, and presented the following as evidence of changed conditions: (1) part of the subdivision (including defendants' property) had been annexed by the City of Bristol and subsequently zoned as commercial, (2) within the subdivision, one home was being operated as an antique shop, and candy was being manufactured out of the basement of another neighborhood home, and (3) traffic had increased since the covenant was established on a subdivision road leading to a new factory. See *id.* at 73. Defendant also introduced evidence that the area surrounding the subdivision had seen increased business in the form of a tabernacle, three gas stations, two stores, a restaurant, and two tourist cabins. See *id.*

The trial court dismissed the plaintiffs' bill of complaint, holding that the conditions had so changed as to make it inequitable to enforce the restrictions. See *id.* at 74. Plaintiffs appealed the verdict and the Supreme Court of Virginia reversed. See *id.* at 71. Relying heavily on the language in Booker, the Ault court found that the changes both inside and outside the neighborhood were "more or less minor and normal" and did not destroy or injure the purposes of the restrictions. *Id.* at 78. Regarding the property annexed and zoned by the City of Bristol, the court stated that most jurisdictions agree "a zoning law cannot constitutionally relieve land within the district covered by it from lawful restrictive covenants affecting its use for business purposes. *Id.* at 75 (internal citations omitted). The court noted that it would not be fair to plaintiffs, who bought property in reliance on the restrictive covenants, to allow the defendants to ignore the restrictions, especially considering the defendants knew the property was burdened by the restrictive covenants when they began building the shopping center.[2] See *id.* at 79.

Applying the above precedent to the facts at issue here, the Respondents have failed to prove that radical changes both in and around the neighborhood have occurred such that the purpose of the restrictive covenant is destroyed. In evaluating the significance of changed conditions and their effect on a neighborhood, the Court in *Booker* looked for changes that have occurred "in the whole neighborhood." *Booker* at 148, 149. The court in *Ault* clearly evaluated changes both inside and outside the property in question. *Ault* at 78. Therefore, it is not sufficient for the Respondents here to point only to

---

[2] Strangely, the defendants originally owned all of the property that the subdivision is located within and they themselves placed the restrictive covenants on the land when they developed the subdivision and sold the land. See *id.* at 79.

increased traffic and commercialization on Rt. 29. The purpose of the restrictive covenant here appears to have been to develop and preserve a residential neighborhood. Respondents have failed to show how these changes on Rt. 29 have defeated this purpose. Also, there is no evidence that there have been any changes within the neighborhood of Carrsbrook itself that would indicate that the restrictive covenant is no longer of any use or benefit to the homeowners.

There is evidence in the record that the Complainants here will be injured if the restrictive covenant in question is not upheld. Complainants have alleged that commercial development of the subject properties will increase light and noise pollution and will detract from the value of the nearby homes. While it may be true that the Respondents' lots are worth more commercially than residentially, the Court will not set aside the covenants to benefit the Respondents where it will harm the Complainants. See *Booker* at 152 (holding that it is of little consequence to the court that the plaintiff's land would increase in value if the restrictive covenant were lifted).

Respondents here allege that their property is virtually valueless due to the dual restrictions placed on their lots by the residential restrictive covenant and the zoning ordinance for commercial use. Whereas *Ault* makes it clear that a contradicting zoning ordinance will not trump a restrictive covenant, Respondents attempt to distinguish their case from *Ault* due to the fact that the ordinance in *Ault* did not completely prohibit residential use in commercially zoned areas as does the zoning ordinance at issue. Therefore, the court's decision in *Ault* to enforce the restrictive covenant would not render the land valueless because it could still be used for residential purposes. Here, Respondents argue they would not be permitted to develop their land commercially or residentially if the Court enforces the restrictive covenant.

The Court is not persuaded by this argument. First, Respondent S-V Associates was aware at the time it purchased Lots 2C and 2D that the properties were encumbered by both the restrictive covenants and the contradicting zoning ordinance. The effects of the restrictive covenant and the ordinance were likely reflected in the purchase price of the property. In other words, it would not be fair to allow the Respondents, who paid a reduced price for land encumbered by the covenant and ordinance, to now profit from being able to sell or develop the land unencumbered by the restrictive covenant. The Respondents would be getting more than they bargained for at the expense of the Complainants. In addition, the Court is not convinced that the Respondents' property is rendered valueless by its decision today. Respondent's expert, Mr. Romenesko, never testified that the land would be

valueless if the covenant remained in place, only that it would be worth more commercially than residentially. Also, the Respondents are free to petition the zoning board to amend the current ordinances.

In conclusion, Respondents failed to put forth sufficient evidence to prove that changes both inside and outside the subdivision have occurred such that the essential objects and purposes of the covenants have been destroyed. Based on the reasoning as set forth above, the Court grants declaratory judgment in favor of the Complainants. The residential restrictive covenants apply to the lots owned by the Respondents; consequently, Respondents are enjoined from developing these lots commercially in the future.