### ALEXANDER ROGERS,

#### *vs.*

### WICTORIA ZWOLAK.

*New Castle, Apr. 29, 1920..*

Where each deed of grantor to lots in two blocks frontage contained an agreement that no building should be erected within fifty feet of the street and that "the whole front * * * to the depth of at least fifty feet shall be kept an open and ornamental space for the free passage of air and light forever," the grantor's intention to establish for the benefit of each lot of land within the two blocks a building line restriction, as part of a general plan of building scheme, was sufficiently manifested, even in the absence of a plot.

A building line restriction as to lots within a particular block may be valid, though not imposed on the rest of the grantor's land, and is for the benefit of all other lots in the block, enforceable in favor of all who subsequently take title to the lots from the grantor.

A building restriction may be modified or terminated by the consent of all affected by it, and, in the absence of any express agreement on the subject, abandonment in any particular case is a matter to be proved by their acts consciously done, and uniformity of action in disregard of a restriction modifies it *pro tanto*, or discharges it entirely, depending on the character of the acts done.

That an owner does not complain of immaterial violations of a restriction does not preclude him from enforcing the restriction against an owner whose violation of it does materially affect him, or, in other words, such acquiescence does not constitute abandonment, so long as the restrictive covenant remains of any value.

A lot owner, seeking to enforce a building restriction as to other lots in the block, need not show that the covenant as to the building restriction entered into or was a part of the consideration which induced his purchase of his lot.

INJUNCTION BILL. The bill is for an injunction to restrain the erection by the defendant of buildings within a certain distance

of a street in violation of a building restriction. The case was heard on the bill as amended, answer, testimony heard orally before the Chancellor and exhibits. The facts are stated in the opinion.

*William W. Knowles* and *Wilbur L. Adams*, for complainant.
*Frank L. Speakman* and *Philip L. Garrett*, for defendant.

THE CHANCELLOR. This suit is to enjoin the erection of a building in violation of a building line restriction. Joseph Tatnall, owning a large tract of land in Wilmington on the northerly side of Market Street, and extending from a point a short distance west of Twenty-Fourth Street to a point east of Twenty-Eighth Street, a distance of about fifteen hundred feet, sold and conveyed on August 6 and 7, 1878, to divers persons in separate lots all of the land between Twenty-Fourth and Twenty-Sixth Streets, and in each deed there was the following provision:

"Provided always, nevertheless, and it is hereby expressly declared, agreed and understood by and between the said parties hereto that no building shall be erected upon said land at a less distance than fifty feet from the northerly side of Market Street and that the whole front of said piece or parcel of land on Market Street to the depth of at least fifty feet shall be kept an open and ornamental space for the free passage of air and light forever."

This restriction was not contained in deeds made by Joseph Tatnall, or by his executors after his death, for his other lots in the tract, and affected only about one-half of the whole Market Street front of his tract.

The intention of Joseph Tatnall to establish for the benefit of each lot of land within the two blocks a building line restriction, as part of a general plan of building scheme, is sufficiently manifested even in the absence of a plot. *Berry on Restrictions on the Use of Real Property*, 347; *Hills v. Metzenroth*, 173 *Mass.* 428, 53 *N. E.* 890; *Leader v. La Flamme*, 111 *Me.* 242, 88 *Atl.* 859. The restriction as to land within a particular block may be valid, though not imposed on the rest of the land of the creator of the restriction. *Sanford v. Keer*, 80 *N. J. Eq.* 240, 83 *Atl.* 225, 40 *L. R. A.* (*N. S.*) 1090.

Therefore, for the purpose of determining the rights and duties of the parties, the restriction may be considered with respect to the particular block of land in which the lands of both the com-

plainant and defendant are located, viz. the block bounded by Twenty-fourth, and Twenty-Fifth Streets, fronting on Market. This conclusion is based on the purpose of the restriction, which, as specifically declared wherever used, is that the space between the city building line and the restricted building line "be kept an open ornamental space for the free passage of light and air forever." Presumably it is as to each lot for the benefit of those other lots in the immediate vicinity of the lot bound by the restriction. , Such a restriction as to lots in a particular block, or square, is for the benefit of all other lots in that square and not necessarily for lots in other blocks or squares. This sounds like an arbitrary conclusion, but it is based on common sense and is supported by *Morrow v. Hasselman,* 69 *N. J. Eq.* 612, 61 *Atl.* 369. A different view might very reasonably prevail where the restriction is as to the kind of a building which it was permissible to erect, or to the uses to which it be put, such as restrictions against the erection of a slaughter house in a residential section. In such cases land in other and more remote blocks may be affected injuriously by an offensive business, so that it may be for their benefit, as well as for lots nearer the locus. Not so, however, where the avowed purpose is to maintain the free passage of light and air. This distinction is also noticed in *Morrow v. Hasselman,* cited above.

It has not been disputed that the restriction as established by Joseph Tatnall was when and as established a valid restriction enforceable in favor of all who subsequently took title to the land from him. It is not necessary to discuss whether it is in law an easement, or whether it runs with the land as a covenant real. In equity such a restriction is enforceable, whether or not it be unenforceable at law because of lack of privity of estate or contract. Indeed, it is enforceable in a Court of Chancery because unenforceable at law. As was said by Chief Justice Bigelow in *Parker v. Nightingale,* 6 *Allen (Mass.)* 341, 83 *Am. Dec.* 632, as to the rights and duties of those who claim under the grantor who established the restriction:

"A purchaser of land with notice of a right or interest in it existing only by agreement with his vendor, is bound to do that which his grantor had agreed to perform, because it would be unconscientious and inequitable for him to violate or disregard the valid agreements of the vendor in regard to he estate, of which he had notice when he became the purchaser. In such

cases it is true the aggrieved party can often have no remedy at law. There may be neither privity of estate nor privity of contract between himself and those who attempt to appropriate property in contravention of the use or mode of enjoyment impressed upon it by the agreement of their grantor, and with notice of which they took the estate from him. But it is none the less contrary to equity that those to whom the estate comes, with notice of the rights of another respecting it, should willfully disregard them, and in the absence of any remedy at law the stronger is the necessity for affording in such cases equitable relief, if it can be given consistently with public policy, and without violating any absolute rule of law."

It is claimed by the defendant that, even if originally enforceable, the original restriction has been abandoned and relinquished, and no other valid restriction binding on the defendant has taken its place. It is true that the original fifty feet restriction has been disregarded in the location of every building in the block. One of the buildings, since torn down, was built on the city building line; two, including the one now owned by the complainants, are about thirty feet back of that line; and three are about twenty feet back. While trivial breaches of a restriction do not destroy the binding quality of a valid restriction (*Morrow v. Hasselman*, 69 *N. J. Eq.* 612, 61 *Atl.* 369), the variation in this case from the original restriction is material and substantial.

The further pertinent facts to be considered are these: In 1899 one Potter owned three unimproved lots at the northeast corner of Twenty-Fourth and Market Streets with an aggregate front of one hundred and twenty-five feet on Market Street, and Wood and Pierce owned two lots fronting on Market Street adjoining Potter's land on the east. It was not shown who then owned the rest of the land in the block fronting on Market Street. Wood and Pierce, desiring to erect houses on their lots within fifty feet of the northerly side of Market Street, made an agreement in writing with Potter, and also with one Joseph L. Carpenter, Jr., wherein the making of the original restriction and the desire of Wood and Pierce to a modification thereof were recited. The parties for a nominal consideration, and representing that they were all owners of land on the northerly side of Market Street between Twenty-Fourth and Twenty-Fifth Streets, consented and agreed that Wood and Pierce could erect houses within fifty feet, but not less than twenty feet, of the northerly side of Market Street. This agreement and all other conveyances herein referred

to are recorded. These houses were erected about thirty feet from the northerly side of Market Street, and the one immediately adjoining the Potter land was acquired by the complainant in 1912, and is still owned by him. His deed contains a twenty feet restriction. Subsequently, in 1909, Potter erected on his fifty feet lot at the northeast corner of Twenty-Fourth and Market Streets a brick and glass structure used as a hot house for growing plants, and built on brick foundations. It was spoken of as a temporary structure, but was as reasonably permanent as such buildings are. This structure was erected directly on the city building line. Subsequently Potter conveyed the one hundred and twenty-five feet of land with a twenty feet building line restriction, and it was afterwards conveyed to the defendant with the same restriction. She has torn down the hot house and started to erect on the lot adjoining the complainant, and on the city building line a large automobile garage, of undetermined height. To enjoin the erection of this building is the purpose of the bill. In his bill, though uncertain whether the defendant is restricted to building not nearer than fifty feet, or twenty feet from Market Street, his solicitors in their brief say that the latter is the one to be enforced. For the defendant it is claimed in her answer, that though there is in her deed a twenty feet restriction, it is not impressed on her lot by and for the benefit of Joseph Tatnall, or by any other person who at the time was the owner of her lot. She also denies that there is any building restriction on her lot for the benefit of the complainant, or for the benefit of his land.

It does not appear whether any buildings have been erected in the block since the complainant became the owner of his lot. Neither does it appear what land in the block was owned by Joseph L. Carpenter, Jr., one of the parties to the agreement, at the time the agreement as to the building line was made, nor whether the parties to the agreement were all of the persons then owning land on the northerly side of Market Street between Twenty-Fourth and Twenty-Fifth Streets. The structure erected by Potter was not on land on which the garage is to be built, for no building has ever been erected thereon.

A building restriction may be modified or terminated by the consent of all who are affected by it. In the absence of an express

agreement on the subject abandonement in any particular case is a matter to be proved by their acts consciously done. Uniformity of action in disregard of a restriction modifies it *pro tanto*, or discharges it entirely, depending on the character of the acts done.

There is, however, in this case such an agreement of owners affected by the original restriction as to make it unnecessary to consider implied alterations of restrictions. After making the agreement in 1899 neither Potter, nor any one claiming under him, can disregard the twenty feet building line restriction. The following facts are significant:

Potter in conveying his three lots as one lot imposed that twenty feet restriction. (2) The complainant's lot conforms thereto. (3) The structure built by Potter was there when the complainant took title. (4) The agreement of 1899 changing the building line from fifty feet to twenty feet was made by owners of at least about two-thirds of the land in the block. (5) All of the houses erected in the block to the east of the complainant conform to the twenty feet line.

It is established therefore that the twenty feet restriction is binding on the defendant as to the land on which the defendant intends to erect the garage. By making the agreement in 1899 and subsequently imposing the twenty feet restriction in the deed conveying all of his land in the block, Potter recognized the evident purpose of the agreement, viz. to establish thereby at least so far as the land then owned by the parties thereto was concerned, a new building line. The reforming of this line was beneficial to Potter, as well as to the other parties to it, for though there was at the time of the agreement on part of his land a structure on the city building line, the rest of his land was subject to the fifty feet restriction, which presumably was an onerous limitation on his use of every part of his land, and thereafter it would have been inequitable to have enforced against the other land of Potter the original restriction at the instance of the other parties to that agreement, or those who claim under them. This interpretation of the purpose and intent of the agreement of 1899 is further manifested by the fact that all the houses erected in the block since 1899 conform thereto.

For the purpose of this case, therefore, and as between the

complainant and defendant, the twenty feet restriction was bind-
ing on both at the time the defendant undertook to violate it by
starting the erection of her building on the city building line. The
view here taken would not necessarily apply to negative easements
other than that of air and light, as for instance, the erection of
buildings to be used for distinctly noxious purposes in violation
of a restriction.

One effect of the agreement is, that no advanatge results to
the defendant based on the fact that the owner of the complainant's
land violated the original fifty feet restriction. In effect Potter
owning one hundred and twenty-five feet of land, said to the
owner of the complainant's land, that he or his successors in the
title to his land would not claim any advantage by reason of the
violation by the owner of the complainant's land of the original
restriction. The fact that the complainant did not complain of
the structure erected by Potter before the complainant acquired
his land does not necessarily deprive him of a right to enforce
the restriction as against the defendant and the structure she de-
sires to build, for Potter's violation may not have materially
affected the complainant. There is evidence to support this view.
This same rule would apply to infractions of the original restriction
by buildings between Twenty-Fifth and Twenty-sixth Streets.

"The fact that the owner of property does not complain of the violation
of a restriction by another or owners against whom he is, or at least was,
entitled to have the restriction enforced, which violation does not materially
affect him in the enjoyment of his property, does not preclude him from en-
forcing the restriction against an owner whose violation of it does materially
affect him." *Berry on Restrictions on Use of Real Property*, § 374, *p.* 488.
See also *Payson v. Burnham*, 141 *Mass.* 547, 6 *N. E.* 708.

In other words, such acquiesence does not constitute aban-
donment so long as the restrictive covenant remains of any value.
*Johnson v. Robertson*, 156 *Iowa*, 64, 135 *N. W.* 585, *Ann. Cas.*
1915*B*, 137; *Schadt v. Brill*, 173 *Mich.* 647, 652, 139 *N. W.* 878,
45 *L. R. A.* (*N. S.*) 726. There was no evidence of any real ac-
quiescence by the complainant in a violation of the restriction,
for it does not appear that any houses were erected in the block
after he became the owner of his land. There is nothing in the
conduct of any of the owners of land in the block since 1899

which is tantamount to an implied agreement among them not to abide by a twenty feet restriction, but quite the contrary.

The cases cited by the defendant to the effect that when the creator of a building line restriction acquiesces in violations of it by owners of a considerable proportion of the land affected by the restriction, it is inequitable for him to enforce it, do not apply here. These cited cases are *Sharer v. Pantler*, 127 *Mo. App.* 433, 105 *S. W.* 668; *Chelsea Land, etc., Co., v. Adams*, 71 *N. J. Eq.* 771, 66 *Atl.* 180, 14 *Ann. Cas.* 758; *Ocean City Ass'n. v. Chalfant*, 65 *N. J. Eq.* 156, 55· *Atl.* 801, 1 *Ann. Cas.* 601. The strongest case in support of the defendant is that of *Ewartsen v. Gerstenberg*, 186 *Ill.* 344, 57 *N. E.* 1051, 51 *L. R. A.* 310. There the Court refused to establish a new building restriction line, it being shown that the original one had been abandoned, saying:

"There was no uniform limitation adopted or acquiesced in when the one originally prescribed had been abandoned." ·

But the Court added this:

"We do not mean to say that an easement abandoned in part will be held as abandoned altogether; for where it is abandoned *pro tanto* only, and a material and beneficial part remains, it will be protected."

The present case comes within the exception referred to by the Court in the cited case, for a material and beneficial part of the original restriction certainly remains and should be enforced. Besides, after a careful reading of the case last cited one easily disagrees with the conclusion there reached. As indicated elsewhere there is in this present case a feature of express agreement · which differentiates it from those cited by the defendant's solicitor. Furthermore, the complainant here is not seeking to enforce the original but the modified restriction.

At one stage of the case it was urged by the solicitors for the defendant that it was necessary for the complainant to show that the covenant as to the building restriction had entered into the consideration of his purchase of his land, and the case of *De Gray v. Monmouth, etc., Co.*, 50 *N. J. Eq.* 329, 24 *Atl.* 388, was cited to support the contention. But the case itself does not so hold. The Court (50 *N. J. Eq. at page* 336, 24 *Atl.* 388) cited m e English decisions to support a general proposition to the

above effect, but on examination of the cited cases they relate to specific agreements palpably beneficial only to the parties thereto, and the Court expressly made an exception as to what is called a building scheme. This distinction is pointed out in *Renals v. Cowlishaw*, 9 *Ch. Div.* 125, and also on appeal in 11 *Ch. Div.* 866. It was not necessary therefore, for the complainant here to prove that when he purchased his land the building restriction in question was part of the consideration which induced the purchase.

Relying on the basic element in injunctive relief against violations of a building line restriction, viz. that it is inequitable to permit one to violate such a restriction imposed on the land by a former owner for the mutual benefit of owners of the several lots of land located within a definite area, the defendant here should not be permitted to violate the restriction validly established originally by Joseph Tatnall on land owned by him and now by the complainant and defendant, and properly and validly modified by an agreement between their predecessors in title as to the land held by the parties to the agreement at the time of the making thereof.

The complainant is, therefore, entitled to a decree enjoining the defendant from erecting the building at a less distance than twenty feet from the northerly side of Market Street.