KENNETT PARK DEVELOPMENT CORPORATION, a corporation of the State of Delaware,

*vs.*

WESTOVER HILLS, INC., a corporation of the State of Delaware; DELAWARE LAND DEVELOPMENT COMPANY, a corporation of the State of Delaware; CHARLES C. GAMMONS, EMMETT S. HICKMAN, ETHEL S. HICKMAN, GEORGE T. BARNHILL, JR., ETHEL P. BARNHILL, SAMUEL LENHER, IRENE KIRKLAND LENHER, LOUIS G. SEEBACH and MILDRED G. SEEBACH.

*New Castle, March 29, 1948.*

*Clair J. Killoran,* of the firm of Killoran & Van Brunt, for petitioner.

*Thomas Herlihy, Jr., S. Samuel Arsht,* of the firm of Morris, Steel, Nichols & Arsht, and *Morris Cohen,* of the firm of Cohen & Cohen, for individual defendants.

*Clarence A. Southerland,* of the firm of Southerland, Berl & Potter, for defendant Westover Hills, Inc.

*Caleb S. Layton,* of the firm of Richards, Layton & Finger, for defendant Delaware Land Development Co.

SEITZ, Vice-Chancellor: The court must determine whether in a development known as "Westover Hills" a certain undeveloped section thereof now subject to restrictions similar to those in effect in some other sections of the development may be released from such restrictions by action of the owners of that section only.

This is the decision after the final hearing of a petition for a declaratory judgment. The petitioner, Kennett Park Development Corporation (hereinafter designated the "petitioner"), entered into a contract on August 12, 1947, with Westover Hills, Inc. and Delaware Land Development Company (hereinafter designated collectively as the "corporate defendants", and individually as "Westover" and "Development"). In this contract the petitioner agreed to purchase from Westover certain tracts of land located generally in the area known as Westover Hills,[1] Among the tracts of land to be purchased, there was included about 61½ acres of vacant land designated as Section D of Westover Hills —the land involved in this dispute. In the contract to sell, the corporate defendants covenanted to convey Section D to the petitioner free and clear of "restrictive covenants, easements, reservations, conditions, charges and other encumbrances", except as provided in the contract itself.[2]

Previously (December 28, 1945), Development had conveyed Section D (except two lots) to Westover. In that deed, all the conveyed land in Section D was restricted, *inter alia,* against the erection of other than "private dwelling houses, each dwelling house being designed for occupancy

---

[1] Development apparently became a party to the contract in order that the purchaser might have the benefit of the services which it can make available, and also the assurance that it would release any rights it might have in enforcing restrictions on the property.

[2] Two lots in Section D are not included in the contract since they were not owned by the defendant Westover. Also, a certain area on the east end of the section is to be conveyed subject to the same restrictions as now exist throughout nearly all the developed sections of Westover Hills.

by a single family only". Article VI of that deed, in so far as here pertinent, provides:

"RIGHT TO MODIFY. The covenants, agreements, conditions, reservations, restrictions and charges created and established herein for the benefit of said Westover Hills, Section D, and each lot therein, may be waived, abandoned, and terminated, modified, altered or changed as to the whole of said tract or any portion thereof with the written consent of the owners of seventy-five per centum of the lots contained in Westover Hills, Section D, and in case only a portion of said tract is intended to be affected, the written consent of the owners of seventy-five per centum of the lots in the portion to be affected shall also be secured, such waiver, abandonment, termination, modification or alteration shall become effective until the proper instrument in writing shall be executed and recorded in the Office of the Recorder of Deeds for New Castle County, Delaware, provided that this Article shall have no application so long as the party of the first part shall be the owner of sixty-five per centum of the lots in said tract."

When it was learned by the owners of property located in the developed sections of Westover Hills that Westover, as the owner of the land in Section D of Westover Hills, proposed along with Development to amend the restrictions heretofore mentioned so as to permit the petitioner to construct garden type apartments and commercial structures costing over five million dollars on most of the land to be sold in Section D, they formed a committee to protect their rights. The committee, consisting of the individual defendants in this action, threatened to enjoin such construction on the ground that the corporate defendants did not have the right to amend, modify, release, or terminate the restrictions existing in Section D so as to permit the erection of other than single family dwellings. The individual defendants are fairly representative of the individual lot owners in Westover Hills.

Petitioner filed its petition for a declaratory judgment and prayer that this court enter a judgment declaring that the corporate defendants can lawfully at any time by proper instrument release, alter, modify, or terminate the restrictions now of record purporting to bind Section D of Westover Hills without infringing upon the legal or equitable

rights of the individual defendants, or any other owners of property in the development known as Westover Hills. The corporate defendants by their answers naturally joined in the prayer of the petition. The answer of the individual defendants says, in effect, that the corporate defendants cannot release the restrictions on Section D.

The existence of the prerequisites to the maintenance of a declaratory judgment action appear.

The petitioner and the corporate defendants contend that the language employed by the grantor to create the restrictions imposed by deed on the property in the various sections of Westover Hills, including Section D, negatives any inference that the grantor intended such restrictions to be for the benefit of the purchasers of lots in all sections of Westover Hills. The individual defendants urge to the contrary.

The petitioner and the corporate defendants also urge that the corporate defendants as the sole owners of all the land in Section D have the right to modify, amend, release, or terminate the restrictions thereon, or that they have such right by virtue of Article VI of the deed conveying Section D from Development to Westover.

The individual defendants contend that the corporate defendants cannot release the restrictions on Section D because they were imposed by the grantor with the intent to benefit all sections of Westover Hills, and are, therefore, part of a uniform residential scheme known as "Westover Hills". They deny that the provisions of Article VI contained in the deed from Development to Westover are available to the corporate defendants because they insist that Westover merely became a substitute developer by virtue of that conveyance. Moreover, they insist that it was intended that Section D should be sold to individual lot owners, and that Article VI was, therefore, intended to apply only after more than 35% of such lots had been sold to individual purchasers. Finally, they contend that Article

VI has no application because through a mutual mistake the words "party of the first part" were used when the words "party of the second part" were intended.

I infer from the proof that if restrictions similar to those existing in the other sections are actually binding on Section D, then the petitioner will violate those restrictions by the erection of the contemplated structures in that section unless they may properly be released.

Much of the argument in the case revolves around the question as to whether or not the restrictions contained in the deed from Development to Westover in 1945 conveying Section D may be modified or rescinded by the corporate defendants. However, the individual defendants contend that a uniform residential plan as to all of Westover Hills, including Section D, came into being many years before the date of that conveyance. If this is so, then we must consider the earlier deeds restricting most of the developed portion of Westover Hills in order to resolve the contention of the individual defendants.

Before consideration may be given to the problem of ascertaining whether or not an intent to create a uniform residential plan for the benefit of the lot owners in all sections of Westover Hills can be implied from the common grantor's course of conduct, see *Tubbs v. Green, ante* p ——, 55 *A.2d* 445, we must first examine the language employed in the restricting deeds to see whether there is room for any such implication. All parties agree that the court cannot imply intent where the language of the deed is explicit thereon. This point contains the essence of the dispute.

By deed dated April 24, 1926, William duPont, Sr. and his wife conveyed to Development a tract of land comprising about 640 acres. All of this land, save 11 acres on the north side, runs along the southerly side of the Kennett Turnpike in a westerly direction from the westerly side of Greenhill Avenue in the City of Wilmington to a point near

Greenville, Delaware. (It will be assumed throughout that the Kennett Pike runs east and west.) The conveyance contained no restrictions, and at the time it was made approximately 145 acres of the easterly portion thereof was under lease to the Wilmington Country Club. Subsequently, another lease to the Club was executed without restrictions. This land is still under lease to the Country Club.

At the time of the conveyance to Development, that corporation was controlled by William duPont, Sr., and for our purposes we may consider that since the death of William duPont, Sr. in 1928 that corporation has been controlled by William duPont, Jr.

By deed dated June 30, 1926, Development conveyed a described portion of land in the northeast portion of the tract to William duPont, Jr. There was annexed to this deed a plot of the described land which was duly recorded with the deed. It should be noted that this deed did not identify the land by an alphabetical section number. However, in subsequent deeds it is referred to as Section A. I shall hereinafter so designate it.

The deed of June 30, 1926, placed numerous restrictions on the use of the described land, and since the purport of these restrictions is a basic issue in this case, I shall set forth those provisions which appears to be particularly meaningful. The opening recitals state:

"Whereas, the party of the first part [Development] is now the owner of a certain tract of land located along the Kennett Pike, in Christiana Hundred, near the City of Wilmington, County of New Castle and State of Delaware, known as Westover Hills, as hereinafter more particularly described a plot of which showing the number, size, location and description of the lots therein is hereto annexed and made a part hereof; and

"Whereas, the party of the first part desires to convey to the party of the second part [William duPont, Jr.] said lands for development and improvement purposes, and, to this end, desires that all of said lands may be subjected to certain covenants, agreements, easements, restrictions, conditions and charges, as hereinafter set forth."

Then follows the language of conveyance and the description by metes and bounds which concludes with the language that

"Annexed hereto and made a part hereof is a plot of said Westover Hills showing the number, size, location and description of each of the lots which have been paid off and established by the party of the first part in said Westover Hills."

The deed then proceeds to subject the described land to certain restrictions, etc. by the following language:

"Subject, However, to the following covenants, agreements, conditions, easements, reservations, restrictions and charges which it is hereby agreed shall be covenants running with the land and shall be binding upon the party of the second part, his heirs and assigns, and upon all of the lands included within the aforesaid metes and bounds which said covenants, agreements, conditions, easements, reservations, restrictions and charges are hereby imposed for the equal benefit of each lot shown upon the plot of Westover Hills hereto annexed.

        \*    \*    \*    \*    \*    \*

"ARTICLE II.

"Use of Land

"The land included in said tract shall be used for private residential purposes only and no building of any kind whatsoever shall be erected or maintained thereon, except private dwelling houses, each dwelling being designed for occupation by a single family and private garages for the sole use of the respective owners or occupants of the plots upon which such garages are erected; and not more than one residence shall be erected or constructed upon any plot shown upon the map or plot of Westover Hills hereunto annexed.

"Schools, &c., Limitations

"Buildings to be used for Schools, Churches, Libraries, Art Galleries, Museums, Clubs or for recreative, educational, religious or philanthropic purposes, may be erected and maintained, provided that the locations therefor and the design, erection and maintenance of such buildings be approved by the owner or owners of a majority of the lots shown upon the plot of Westover Hills hereto annexed; and subject further to the approval of the property owners on each side and immediately opposite the proposed site, and then only provided there has been filed in the office for the Recording of Deeds, in and for New Castle County, Delaware, a deed or other instrument in writing executed by the parties herein mentioned, approving specifying and limiting

the uses to which such building may be put; and subject further to all other limitations, restrictions or conditions herein contained.

\* \* \* \* \* \*

"ARTICLE VI.

"Right to Modify

"The covenants, agreements, conditions, reservations, restrictions and charges created and established herein for the benefit of said West-over Hills and each lot therein may be waived, abandoned and termi-nated, modified, altered or changed as to the whole of said tract or any portion thereof with the written consent of the owners of seventy-five per centum of the lots contained in Westover Hills; and in case only a portion of said tract is intended to be affected, the written consent of the owners of seventy-five per centum of the lots in the portion to be affected shall also be secured. No such waiver, abandonment, termina-tion, modification or alteration shall become effective until the proper instrument in writing shall be executed and recorded in the office of the Recorder of Deeds for New Castle County, Delaware; provided that this Article shall have no application so long as the party of the first part shall be the owner of sixty-five per centum of the lots in said tract.

\* \* \* \* \* \*

"ARTICLE XII.

"Right to Enforce

"The provisions herein contained shall run with and bind the land and shall inure to the benefit of and be enforceable by the party of the first part or the owner of any land included in said tract, their respective legal representatives, heirs, successors and assigns, and failure by the party of the first part or any land owner to enforce any restriction, condition, covenant or agreement herein contained shall in no event be deemed a waiver of the right to do so thereafter as to the same breach or as to one occurring prior or subsequently thereto."

The conveyance from Development to William du-Pont, Jr. from which I have just quoted at length was merely a straw conveyance in that Mr. duPont reconveyed the property to Development. The same practice was fol-lowed as to all conveyances to William duPont, Jr. which are mentioned herein, although a few sales were made and deeds therefor executed by Mr. duPont directly. The effect of these conveyances to Mr. duPont was, of course, to sub-ject the land to restrictions before sales of individual lots were made by Mr. duPont or Development.

Since the lots in Section A were thereafter sold by Development (or Mr. duPont) subject to the restrictions contained in the deed above quoted, it becomes necessary to examine such language minutely in order to see whether we may look behind these restrictions for the grantor's intent. As stated, all parties agree that no intent to create a residental plan can be implied if the language employed by the grantor explicitly defines the intended beneficiaries of the restrictions imposed.

The recitals at the very outset of the recorded deed of June 30, 1926, conveying Section A throw substantial light on the intended beneficiaries of the restrictions imposed. It is first recited that Development owns the land which is thereinafter described and which is shown on the plot attached thereto. The description and the plot are of Section A only. "Westover Hills" is only mentioned with respect to Section A. The plot does not show the other land then owned by Development. The next recital says that Development desires to convey said lands to William duPont, Jr. for development purposes and, to that end, desires that all of said lands may be subjected, *inter alia,* to certain restrictions as thereinafter set forth.

It is difficult to imagine more explicit language limiting the recited objectives to the land contained in Section A.

After the language of conveyance and description, the deed recites that the conveyance is subject to the "following * * * restrictions and charges which it is hereby agreed * * * shall be binding * * * upon all of the lands included within the aforesaid metes and bounds which * * * are hereby imposed for the equal benefit of each lot shown upon the plot of Westover Hills hereto annexed". We have here very clear language indicating that the beneficiaries of the restrictions were only to be the owners of the property included within the plot which was annexed to the deed— Section A.

The second paragraph of Article II provides that cer-

tain prohibited structures may be built if "approved by the owner or owners of a majority of the lots shown upon the plot of Westover Hills hereto annexed"—the Section A plot.

Article VI deals with the right to modify the restrictions and provides that any of the restrictions may be "terminated, modified, altered or changed as to the whole of said tract or any portion thereof with the written consent of the owners of seventy-five per centum of the lots contained in Westover Hills." It goes on to provide that the Article should "have no application so long as the party of the first part [Development] shall be the owner of sixty-five per centum of the lots in said tract." It is apparent from a reading of the entire deed that "Westover Hills" and tained in the annexed plot, i. e., Section A.

Article XII deals with the right to enforce the restrictions. This Article provides that the restrictions run with and bind the land and inure to the benefit of Development, or the owner of any land included in "said tract". Once again, as in the numerous earlier provisions in the deed, the reference to "said tract" clearly means the tract described in the deed and contained in the annexed plot—Section A.

Therefore, from an examination of the deed and annexed plot, pursuant to which Section A was conveyed, I am of the opinion that the grantor by the language employed intended to confine the operation and benefit of the restrictions therein to the land in Section A. Since subsequent purchases of the land in Section A by individual purchasers were made subject to these restrictions, it follows that my conclusion is equally applicable to them.

Let us consider the language employed by the grantor in making later conveyances in other parts of Westover Hills to see whether the grantor persisted in this same expression of intent.

In July and August of 1926, Development conveyed the property (about 12 acres) on the north side of the Kennett Pike to Ethel duPont without restrictions. On April 25, 1927, Development conveyed without restrictions to Alice duPont Ortiz a tract of some 88 acres southwest of Section D. The individual defendants urge that these conveyances, although without restrictions, are not inconsistent with an intent to create a residential plan. It must be said, however, that they furnish no evidence of an intent to create a restricted residential plan for the benefit of all of the development known as Westover Hills, and to that extent at least must be harmful to the cause of the individual defendants.

On October 30, 1928, Development conveyed to William duPont, Jr. Section A Extension containing approximately 38 acres, and located southwest of Section A. Except that it referred to Section A Extension the provisions of this deed are generally the same as those contained in the deed from Development to William duPont, Jr., conveying Section A. The language of this deed, like that in the deed conveying Section A, explicitly negatives any intent by the grantor to insert the restrictions for the benefit of persons other than the owners of lots in Section A Extension. The language imposing the restrictions recites that such restrictions "are hereby imposed for the equal benefit of each lot shown upon the plot of Westover Hills, Section A Extension hereto annexed."

The individual defendants urge, however, that this deed sustains their contention that the grantor intended the restrictions to be for the benefit of the entire development. They rely on certain language contained in Article X of this deed. The portion of this Article pertinent to the argument of the individual defendants is as follows, and the language relied upon by them is italicized:

*"Service Corporation*

*"The property acquired by the said Delaware Land Development*

*Company from William duPont located in Christiana Hundred is to be known as Westover Hills* and for the purpose of maintaining said Westover Hills and in particular Section A Extension thereof in good order and condition and for the purpose of providing for the cutting of sidewalk lawns, gathering of leaves and removal of snow from sidewalks, street lighting, etc., a service corporation is to be organized to be known as 'Service Corporation of Westover Hills' or by some other similar name, *whose members shall be lot owners of Westover Hills* and the conditions of membership therein shall be such as may be set forth in this agreement and any other agreements respecting *other parts of Westover Hills, when and as the same may be opened for development* and likewise such as are set forth in the Certificate of Incorporation of the said corporation.

"The purchaser of any lot of land comprised in Section A extension by the acceptance of a deed to said land, is obligated and does bind himself, themselves, their and each of their heirs, successors or assigns to become a member of the said Service Corporation and to be bound by all of its rules and regulations and shall be subject to all the duties and obligations imposed by membership in said corporation.

"The said Service Corporation shall, when established as hereinafter provided, assess the property owners of each lot a tax according to the number of feet which the lots of said owners shall extend along or abut upon streets or lanes in said tract, with a minimum charge of Five Dollars per annum. Said assessment shall be made by the members of the Service Corporation and may be fixed at one time for one year or for such number of years as may be determined upon.

"In case of lots abutting upon two or more streets, the assessment shall be based upon a frontage not in excess of one-half of the aggregate street frontage of such lot. The Service Corporation however shall not be organized, nor shall the obligations of the owners with respect thereto, arise until at least five residences shall have been completed and occupied in said Westover Hills, Section A Extension."

It is obvious that this Article of the deed must be viewed in the light of the language of the deed generally, and with due regard for the fact that it deals with the Service Corporation only. In fact, rather than sustaining the contention of the individual defendants, it seems to me that certain language of this Article negatives their argument that the restrictions were intended for the benefit of all of Westover Hills. Thus, the Article recites that the members of the Service Corporation "shall be lot owners of Westover Hills and the conditions of membership therein shall be

such as may be set forth in this agreement and any other agreements respecting other parts of Westover Hills, when and as the same may be opened for development". This language falls far short of being language evidencing a fixed intent, especially since the word "may" is employed.

Speaking of the language of Article X the individual defendants say:

"Here is the first recorded utterance by the common grantor indicating an intent to create a uniform residential plan for the area embracing within its limits Section D. The language is carefully chosen and highly revealing. The property acquired by the said Delaware Land Development Company from William duPont located in Christiana Hundred is to be known as Westover Hills * * *.' Development Company could scarcely have spoken more clearly."

A little later in their brief the individual defendants state: "But portions of that land [the 640-acre tract] had been conveyed away before the date of this deed [conveying Section A Extension]."

The individual defendants suggest that the grantor could not have had in its contemplation when it made this deed restricting Section A Extension the portions of the tract which it had theretofore conveyed, i. e., two conveyances to Ethel duPont and the conveyance to Alice duPont Ortiz (Section A conveyance appears to have been ignored here).

The individual defendants argue at length why these areas were not in the contemplation of the grantor. Based on the assumption that their conclusion is correct, they infer that "Westover Hills", as used by the grantor in the deed conveying Section A Extension, excluded the area theretofore conveyed and embraced all that it still possessed which, of course, included Section D. Then, they say "This establishes one of the essential elements of a neighborhood scheme. A particular neighborhood has been defined and set apart."

I am unable to agree that the use of the expression

"Westover Hills" in Article X is at all determinative of the problem here presented.[3] However, the vital point is this: Even if we concede that Development evidenced an intent in the deed to Section A Extension to develop all the land in Westover Hills for residential use, it does not follow that the finding of such intent is determinative of the issue here presented, because a developer could, I have no doubt, in one and the same instrument evidence an intent to develop an entire area, and yet at the same time evidence an explicit intent to confine the benefits of the restrictions contained therein to a designated portion thereof.

I conclude that the language of Article X of the deed to Section A Extension did not indicate an intent on the part of the grantor to insert the restrictions for the benefit of the property owners in all sections of Westover Hills.

By deed dated August 28, 1929, Development conveyed Section C to William duPont, Jr. This section, consisting of 69 acres, is roughly west of Section A and A Extension. Except for the necessary changes in verbiage, the provisions of this deed including the restrictions are the same as those contained in the deed from Development to William duPont, Jr. conveying Section A and Section A Extension. The deed recited that the restrictions were imposed "for the equal benefit of each lot shown upon the plot of Westover Hills, Section C hereto annexed."

My comments as to the intent with which the grantor employed such language in the deeds conveying Section A and Section A Extension are equally applicable to this deed.

---

[3] An examination of the deed conveying Westover Hills, Section A which, of course, came before the deed conveying Section A Extension, will indicate why the individual defendants have preferred to seize upon the expression "Westover Hills" as used in the deed to Section A Extension rather than to use that term as it was employed in the earlier deed to Section A. The language of the deed to Section A clearly indicates that "Westover Hills" as used there encompassed only Section A. Indeed, when used in the deed to Section A Extension with respect to the restrictions, it is clear that "Westover Hills" meant only Section A Extension.

By deed dated March 6, 1930, Development conveyed some 25 acres designated on the plot annexed to the deed as a portion of Section E to Delaware Trust Company, trustee. The deed to this land which is located south and southwest of Section C contained restrictions against business and manufacturing use and provided that it could only be used for residential purposes. In 1935, Delaware Trust Company, trustee, conveyed it to Henry B. duPont, subject to the same restrictions. It is agreed that there are no buildings of any kind on this land, although it apparently forms a part of Mr. duPont's airport.

On August 20, 1930, Development conveyed somewhat over 4 acres of land to Mary duPont Laird (part of Section E). This land is located southwest of the tract conveyed to Delaware Trust Company, trustee, and now owned by Henry B. duPont. The deed contained restrictions against the use of the property for business or manufacturing purposes.

The individual defendants urge that the conveyances to Delaware Trust Company, trustee, and to Mary duPont Laird are not inconsistent with an intent to create a residential plan. However, it is clear that they supply very little, if any, evidence of an intent on the grantor's part to create a restricted residential plan for the benefit of all of Westover Hills.

On April 12, 1935, Development recorded a 3 acre plot designated as "Westover Hills Extension" which is known as "Barton Circle" and made the land therein subject to the Section A restrictions. This small plot is located east of Section A. Since this land was conveyed subject to the restrictions existing in Section A, it is of no real significance in resolving the issue before the court.

On September 27, 1935, Development conveyed a small lot immediately to the west of the Mary duPont Laird parcel of land to Frank and Emily Smith subject to certain restrictions which, while different from those im-

posed on the other sections, did prohibit non-residential use. A few additional lots in this immediate area were also sold subject to the same restrictions.

On April 21, 1936, Development sold to Stanley and Mary Abrams a small plot of land located immediately to the south of the easterly portion of Section D. The deed of conveyance from Development to Stanley and Mary Abrams contained restrictions, while not like those contained in the deeds conveying Sections A, A Extension and C did provide that the land was to be used for residential purposes. A few additional lots in this immediate area were sold subject to the same restrictions as appeared in the Abrams' deed.

The deeds from Development to the Smiths, the Abrams and some few other purchasers in the same area in effect limited the use of the land to residential purposes. This area is known as the Overbrook Road section or as part of Section E. The conveyances to the owners in this area do not purport to say for whose benefit the restrictions are imposed, and consequently, if they encompassed any substantial portion of the development known as Westover Hills a problem of determining the grantor's intention might be involved. However, only about 36 acres are involved and the individual defendants do not even argue that a uniform restricted plan binding on all of Westover Hills may be properly inferred from the grantor's course of conduct with respect to these conveyances.

On April 5, 1937, Development recorded an instrument whereby it covenanted to stand seized of "Westover Hills, Section B" consisting of 62 acres. The deed containing the covenant had annexed thereto a plot of Section B. The deed described the land in Section B. The purpose of executing and recording the deed and annexed plot was to subject the land to restrictions of the same general type as governed Section A, A Extension and C. Thus, as in the deeds covering the other sections, it was recited that

the restrictions were for the benefit of the covenantor (Development) and "the owner of any land included in said tract." It appears quite clearly that Development by the language employed in this deed intended to subject Section B to restrictions for the benefit of the owners of land in that section only.

On July 14, 1938, Development conveyed a tract of about 28 acres just east of Section D to Bellevue Park, Inc. without restriction. This corporation was the wholly owned subsidiary of Development. The land forms an estate known as "Crooked Billet" and is used for residential purposes.

Also on July 14, 1938, Development conveyed some 142 acres to Bellevue Park, Inc. without restriction. This land is leased to the Wilmington Country Club. It contains the Club and golf course.[4]

Without considering the negative implications of the failure to insert restrictions in the two last mentioned conveyances, it is clear that they do not help the cause of the individual defendants.

On February 24, 1942, Development recorded a plot showing Block O consisting of about 8 acres located south of Section B. Some lots in this block were subsequently sold by Development subject to the same restrictions as were imposed on Section B. The individual defendants tacitly concede that these individual sales are of no particular significance.

Finally, on December 28, 1945, Development conveyed practically all the lands then owned by it, including any remaining unsold lots in Sections A, A Extension, B and C of Westover Hills and the proposed Section D to West-

---

[4] In 1942, Bellevue Park, Inc., was merged into Shapdale, Inc. Thereafter, on January 18, 1946, Shapdale, Inc., conveyed, *inter alia*, the property known as "Crooked Billet" to Bellevue Hall, Inc., a new corporation. All these corporations were or are owned and controlled by William duPont, Jr.

over. At the date of this conveyance, the great bulk of the other sections had been sold. Section D, which is located in the most westerly portion of the tract, was and is vacant land. As heretofore stated, the land in Section D which was conveyed by this deed, was subjected to the same general restrictions as had been imposed on Sections A, A Extension, B and C of Westover Hills. Once again the language employed in this deed evidenced an explicit intent to confine the benefits of the restrictions to the grantor and the landowners in that section. I conclude, therefore, that the restrictions in the deed of December 28, 1945 were imposed for the benefit of the owners of Section D only.

While the deed referred to an annexed plot, it appears that the plot was not annexed, nor was it recorded. In June of 1947, in connection with a recorded sewer agreement between the corporate defendants and the Levy Court of New Castle County, a plot, including Section D, was recorded in which a tentative development of Section D was shown in broken lines but the area was designated as "undeveloped". In view of the explicit language of the deed, this plot did not constitute admissible evidence. But even assuming its admissibility, there is no inconsistency between this plot and either the sectional development of Westover Hills or the language of the previous conveyances. As heretofore stated, the distinction must be kept in mind between the grantor's intent with respect to developing a plot and his expression of intent with respect to the beneficiaries of any restrictions imposed thereon.

By examining all of the conveyances by Development over the years, I do not mean to imply thereby that the language in any particular subsequent deed could have altered the effect of the language contained in earlier conveyances. However, I have taken the trouble to review all the conveyances in order to show that no substantial portion of the development was conveyed in such a way as to permit the court to find an implied intent with respect to the beneficiaries of the restrictions.

A reading of the various deeds imposing restrictions on most of Westover Hills evidences a clear intent to develop the land section by section and to confine the benefits of the restrictions on each particular section to the lot owners in that section.

The individual defendants assert that "There is nothing in any of the deeds to the individual defendants which declares that the restrictions shall *not* apply in Westover Hills beyond the limits of the section in which the particular lot is located." By this language the individual defendants clearly imply that the grantor was under a duty, if it desired to limit the benefits of the restrictions to a particular section of Westover Hills, to set out in the deeds not only the beneficiaries of the restrictions, but also to negative any intent to confer the benefit of such restrictions on the lot owners in other sections of the development. I am aware of no pertinent rule of law which imposes such a requirement on a common grantor if he desires to so limit the beneficiaries of restrictions. Indeed, the policy of the law towards restrictions is such that the person asserting that a restriction exists for his benefit must assume the burden of so demonstrating. See *Snow v. Van Dam*, 291 *Mass.* 477, 197 *N.E.* 224; and see *Gibson v. Main*, 14 *Del. Ch.* 112, 122 *A.* 188, affirmed with modifications 14 *Del.Ch.* 449, 129 *A.* 259. My conclusion is that the only restrictions now existing on Section D are those contained in the 1945 deed from Development to Westover.

The petitioner asks for a declaration that Development and Westover can lawfully by duly recorded instruments alter, modify or terminate the restrictions now of record and purporting to bind Section D without infringing upon the rights of any owners of property in Sections A, A Extension, B, C or in the Overbrook Road sections of Westover Hills.

Since I have concluded that the only restrictions binding on Section D are those contained in the deed conveying

Section D to Westover, and since I have concluded that such restrictions are for the benefit of landowners in Section D only, and since Development and Westover admittedly own all the land in Section D, it follows that they may release such restrictions. See *Rogers v. Zwolak,* 12 *Del. Ch.* 200, 110 *A.* 674.

In view of my conclusion, it becomes unnecessary to determine the many questions raised by the individual defendants as to the true meaning of Article VI—the provision dealing with the right to terminate the restrictions.

The individual defendants have offered in evidence a great deal of oral and documentary evidence from which they would have the court infer that Development intended to create a residential plan for all of Westover Hills, including Section D. Very little of this evidence was ever communicated to the public. The petitioner and the corporate defendants have raised many objections to its admissibility. I now rule that such evidence was inadmissible because the language of the deeds conveying the great bulk of the properties in Westover Hills was so explicit with respect to the beneficiaries of the restrictions that it alone must control here. In reaching this conclusion, I assume rather than decide that such evidence is inconsistent with the language of the deeds dealing with the beneficiaries of the restrictions.

In view of my conclusions, it is unnecessary to consider whether the statute of frauds is here involved.

An order granting the prayer of the petition will be advised on notice.

Note. Affirmed on appeal. See *Gammons, et al., vs. Kennett Park Development Corp., post p.* 525, 61 *A.* 2d 391.