88 A.2d 121 (1952)
WELSHIRE, Inc.,
v.
HARBISON et ux.
Civ. A. No. 264.
Court of Chancery of Delaware, New Castle.
April 9, 1952.
James R. Morford, William Marvel, and Morton E. Evans (of Morford, Bennethum, Marvel & Cooch), all of Wilmington, for plaintiff.
Stephen E. Hamilton, Jr. (of Logan, Marvel & Boggs), Wilmington, for defendants.
*122 BRAMHALL, Vice Chancellor.
Plaintiff is the owner of a tract of land situate in Brandywine Hundred, New Castle County, State of Delaware, known as "Welshire". Defendants are the owners of a house and lot situate in this development. In July, 1937, through the transfer of deeds and the recording of a plot, plaintiff divided this tract into building lots, each lot having a frontage of approximately 150 feet with approximately the same depth. By means of said deeds plaintiff also provided general building restrictions on all of the lots in the development. The pertinent restrictions provided: that only one residence should be erected on any one lot as shown on the plot, that there should be a setback or building line of 50 feet from Carr Road, on which the property of defendants faces, a setback of 50 feet on lots facing Shipley Road and a setback of 45 feet as to other lots on other roads, a side setback of 30 feet and a provision that before any owner could build a house on this development he must first submit to plaintiff for approval his plans therefor.
Plaintiff was able to sell only one lot on this development, the lot of defendants, from 1937 to 1947. In 1947 another lot was sold in the same block as the lot of defendants. At about the same time plaintiff attempted to make a change in the development. It had a plan prepared and recorded, in which the size of the lots was reduced from 150 feet to approximately 100 feet. In 1950 plaintiff sold a third lot. The second lot sold was of approximately the same size as the lot of defendants; the third lot and part of another lot had a frontage of approximately 105 feet. Both the other two lot owners signed agreements, releasing the plaintiff from their right to enforce the 1937 restrictions. Defendants refused to do so. In 1951 plaintiff again proceeded with the revision of its lot plan by conveyance and by recording a new plot, the conveyances including a revision of the old restrictions. Under these restrictions the size of the lots was reduced from approximately 150 feet in frontage to approximately 100 feet, the length was somewhat shortened and the setback from the street line and the side setbacks were also reduced. Plaintiff, however, made no change in the size of the lot, or in the restrictions, in the block in which defendants' lot is situate. The size of the two lots in the development across the street from defendants' property was not changed. The defendants and the other two owners of the lots sold had each in the meantime erected very substantial residences on each of the lots. Defendants objected to plaintiff's proposal to change the size and the restrictions.
Plaintiff contends that it is entitled to a favorable judgment on its petition because: (1) changed conditions have rendered the old restrictions inoperable and therefore void; (2) the lots affected by the proposed changes in the restrictions are too remote from the property of the defendants to cause defendants any injury; (3) that in any event defendants are not entitled to equitable relief.
Defendants contend: (1) that there has been no radical change in the character of the surrounding neighborhood as to destroy the essential purpose of the original restrictions; (2) the 1937 deeds created mutual rights for both plaintiff and defendants and all others who may purchase lots in Welshire; (3) plaintiff in no event is entitled to a declaration that it may modify the restrictions of 1937 or have them declared null and void and impose new ones on the lots of Welshire.
*123 In the determination of this case it is necessary to consider:
1. Whether or not there has been a radical change in the development sufficient to justify the granting of this petition;
2. Whether or not defendants are in a position to object to the granting of plaintiff's petition?

1. Change in Development
The purpose of the original restrictions of 1937 was obviously to make the lots in the development attractive to prospective purchasers by protecting them in the enjoyment thereof. At the time of the beginning of this development there were no other large developments adjacent to this property. Since then there have been several developments in the immediate neighborhood, upon which a number of properties have been erected. In order to compete with these other developments, it was testified that plaintiff must install roads, water and sewage, the total cost of which would be approximately $12 per front foot. Plaintiff contends that the cost of these improvements would be so great that it would be impossible to sell lots of the size of the lots in Welshire for the price which it would have to demand in order to realize a profit.
At the time of the beginning of this development there were no properties erected on any of the lots. From 1937 until the institution of this action only three lots had been sold. Upon these three lots, however, the owners had erected very attractive and desirable homes. There was therefore no radical change of any kind in the development itself. Adjacent to or in the vicinity of Welshire there are other developments, in which attractive so-called ranch type homes, costing in the neighborhood of from $20,000 to $25,000 each, are being erected. These developments will have good roads and also water and sewage. There has been no other change in the properties surrounding Welshire which would in any way affect the development of Welshire.
Where, under a general plan of development, the owner of property divides it into building lots and places upon them uniform restrictions, any subsequent owner of any of these lots may enforce the restrictions against any other grantee or present owner. Jackson v. Richards, 26 Del.Ch. 260, 27 A.2d 857; Hooker v. Alexander, 129 Conn. 433, 29 A.2d 308; Schickhaus v. Sanford, 83 N.J.Eq. 454, 91 A. 878, 7 Thompson on Real Property, Sec. 3655.
In order to warrant a court in setting aside building restrictions because of a change in conditions, that change must be of such a nature and must be so radical that the original purpose of those placing the restrictions upon the development can no longer be carried out. Sanders v. Campbell, 231 Mich. 592, 204 N.W. 767; Armstrong v. Leverone, 105 Conn. 464, 136 A. 71.
It must also be of no substantial value to the dominant tenement. Drexel State Bank v. O'Donnell, 344 Ill. 173, 176 N.E. 348; Katzman v. Anderson, 359 Pa. 80, 59 A.2d 85.
A change in economic conditions alone will not justify the setting aside of these restrictions. Ockenga v. Alken, 314 Ill.App. 389, 41 N.E.2d 548; Fidelity Title & Trust Co. v. Lomas & Nettleton Co., 125 Conn. 373, 5 A.2d 700; Allen v. Massachusetts Bonding & Ins. Co., 248 Mass. 378, 143 N.E. 499, 33 A.L.R. 669.
When the reasons for the presentation of this petition are examined, it is apparent that they rest entirely upon the contention that the change in economic conditions has made these lots less desirable and that the change in the size of the lots, as proposed by the plaintiff, would make the lots more valuable and, perhaps, more salable; not that the objects and purposes of the restrictions have been practically destroyed, or, in fact, that there has been a material change in them. As far as the property itself is concerned, there has been absolutely no change which would affect the general purpose of the plaintiff at the time of the placing of the original restrictions. Other homes being built in the neighborhood, while not of the same character and design as two of the homes in Welshire (one home in Welshire is a ranch type *124 house), cannot be said to have any effect upon the desirability of the lots in Welshire from the standpoint of physical enjoyment.
Plaintiff is asking this court to declare the restrictions in this development to be null and void for all time as to every lot in the development. Its prayer is therefore much broader in scope than in an injunction proceeding, in which one of the property owners would seek an injunction against another owner. At the time of the inception of this development the purpose of the owner was to have a high-class development of substantial and attractive homes erected upon large lots. Due, perhaps, to a change in economic conditions, the purpose of the plaintiff as owner of the development has not been realized. However, the change is entirely economic, a condition might or might not again change at some future time. In the absence of a change in the physical condition of the development or the property immediately adjacent thereto affecting the development in a substantial manner, the restrictions should not be declared null and void and of no force and effect in the whole development.
Plaintiff relies upon the case of Matthews v. Kernewood, Inc., 184 Md. 297, 40 A.2d 522. In that case the owner of the development, by reason of a change in economic conditions, was unable, after a period of ten or twelve years, to dispose of more than half of its lots. That case differs from the present case in several respects. The restrictions were apparently not placed upon the lots until they were sold and were then placed in the deed. In addition, the restrictions themselves provided for their annulment or modification at any time by the owner of the unsold lots. The court's decision allowing a re-subdivision of the unsold lots, was based upon the grounds: (1) that the mere filing of the plot did not place a restriction as to the size of the lots; and (2) that the restrictions themselves provided for the annulment or modification of the unsold lots as the owner might dictate. In Welshire there is not only a plot but there are also restrictions (in which the plot is incorporated by reference) which were placed upon all of the lots before an attempt was made to dispose of any lots. There is no contention that there is anything in the restrictions of Welshire providing for the annulment or modification thereof.
I must therefore conclude that the changes in conditions which have occurred are not of such a nature and not sufficient in extent to declare the original restrictions inoperative.

2. Can Defendants Enforce The Restrictions of 1937?
Since I have determined that the restrictions of 1937 are not affected by any change in conditions, it follows that these restrictions are therefore of full force and effect. However, I shall briefly consider the other contentions of plaintiff.
Plaintiff contends that defendants cannot successfully object to the change in these restrictions because: (1) since there are no changes in the restrictions in the block or in the immediate vicinity of the home of the defendants, they have not been injured and therefore cannot complain; (2) defendants are estopped from asserting their rights by their failure to object; (3) defendants are prevented from asserting their rights under the doctrine of balancing of conveniences.
As heretofore stated, under a general development scheme, a grantee may enforce the restrictions against any other grantee or against the grantor. The restrictions in this case were general and covered, with no exceptions, the entire development. There was therefore, in Welshire, a general scheme of development, in which a lot owner might object to any violation of these restrictions by any other lot owner or by the original owner upon any lot on the entire development. The fact that the proposed changes in the restrictions for Welshire do not apply to the block in which defendants' property is located does not deprive them of their right to object.
The case of Rogers v. Zwolak, 12 Del.Ch. 200, 110 A. 674, cited by plaintiff, is distinguishable from the present case. In that case the owner of a large tract of land on *125 the northerly side of Market Street, in Wilmington, conveyed a number of lots between 24th and 28th Streets under the restriction that no home should be erected within a certain distance of Market Street. He did not so provide as to an approximately equal number of other lots on Market Street not within the particular blocks therein referred to. The question was as to whether or not the owner could place such a restriction on a part of his lots and not on the other. The court held that there was a general plan indicated as to the part of the land upon which the restrictions were placed and that these restrictions would be enforced as to that part. In Welshire it has been noted that the restrictions were placed upon all of the lots in question before any of the lots were sold. This clearly indicated an explicit intent to create a uniform system of reciprocal covenants applicable to the whole development. The Zwolak case is not applicable here.
The action of defendants relative to the sale to Shields of a lot somewhat smaller than the lot as shown on the original plot of 1937, the erection on that lot of a house and the execution by Shields and Geiling of agreements releasing the plaintiff from any responsibility by reason of the proposed change in the restrictions do not amount to an estoppel. Defendants did object generally to the change in the restrictions and had some discussion about it with the representatives of the plaintiff. Assuming that defendants knew of the execution of the releases and the sale of the lot to Shields, the fact that the defendants took no action with respect to these matters would not prevent them from defending this action. Mere silence, unless there is a duty to speak, will not amount to an estoppel. Miller v. Klein, 177 Mo.App. 557, 160 S.W. 562. Defendants in this case did `speak' and the plaintiff had knowledge of their objection to plaintiff's proposed change. Plaintiff therefore cannot claim that it was misled as to the attitude of the defendants with respect to the proposed change in the plot and restrictions.
The restrictions were placed upon all of the lots in Welshire by the usual method of transferring title. They were also contained in the deed from plaintiff to defendant. I have determined that these restrictions are part of a general plan, agreed upon at the time of the sale of defendants' lot, and that they have not become null and void by reason of any radical change in conditions, either in the development itself or in the developments immediately adjacent thereto. The right of the defendants with respect to the covenants is therefore clearly established. In such cases an injunction should issue without regard to the degree of annoyance. Spahr v. Cape, 143 Mo.App. 114, 122 S.W. 379; Evangelical Lutheran Church v. Sahlem, 254 N.Y. 161, 172 N.E. 455. Defendants have the right to determine for themselves whether or not plaintiff should comply with the restrictions placed upon the development by the plaintiff and to which the defendants agreed. Defendants have chosen to insist that plaintiff comply with the restrictions. They are within their rights to do so.
At the trial objections were made by counsel to the admission of certain testimony and records. Counsel was permitted to proceed, subject to a later ruling as to their relevancy. With one exception these objections have been abandoned and need not now be considered.
The remaining objection concerns the offer by defendant of the deposition of one John M. Yeatman, an officer of plaintiff corporation, who appeared and testified as a witness at the trial.
John M. Yeatman was the organizer of the plaintiff corporation and is its sole stockholder. He is also an officer of the corporation. Rule 26(d)(2) of this court provides that the deposition of a party or of any who at the time of taking the deposition was an officer, director, or managing-agent of a corporation which is a party may be used by an adverse party for any purpose. Since no other objection was taken to the admission of this deposition, it was clearly admissible.
Plaintiff's application for declaratory judgment is denied. An order will be signed, upon notice, in accordance with this opinion.