**Emmett M. ANDREWS, Jr., et al., Plaintiffs,**

**v.**

**Edward J. McCAFFERTY and Mary A. McCafferty, his wife, Defendants.**

Court of Chancery of Delaware, New Castle.

March 4, 1971.

Walter L. Pepperman, II, of Morris, Nichols, Arsht & Tunnell, Wilmington, for plaintiffs.

Joseph J. Longobardi, Jr., of Longobardi & Schwartz, Wilmington, for defendants.

DUFFY, Chancellor:

This action involves a dispute among property owners in a suburban development known as Shipley Heights. Plaintiffs seek a permanent injunction which will prevent defendants from keeping, breeding or raising pigeons on their property. The complaint alleges that such activity violates the following restrictions which bind all lots in Shipley Heights:

> "1. All lots within said metes and bounds as shown on the aforesaid Plan [of Shipley Heights], except the area designated on said Plan as 'Reserved for Public Use', shall be known and described as residential lots."

> \*   \*   \*   \*   \*   \*

> "9. No pigs, chickens, poultry, rabbits, horses or cattle shall be kept or placed on any portion of the above described tract."

> "10. No noxious, or offensive trade or activity shall be carried on upon any portion of the above described tract or parcel nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

Defendants concede that they maintain and breed and/or keep racing pigeons on their property and that they are aware of these restrictions. Plaintiffs requested removal of the pigeons, defendants refused, this ac-

tion followed. This is the decision on plaintiffs' motion for summary judgment.

### A.

■ ■ Generally speaking, the law favors the free use of one's property and restrictions on the use of land are construed most strongly against the grantor. Gibson v. Main, 14 Del.Ch. 449, 129 A. 259 (Supr. Ct.1925); Alliegro v. Home Owners of Edgewood Hills, 35 Del.Ch. 543, 122 A.2d 910 (1956). The intent of the grantor, as determined from the ordinary meaning of the words used, is to be followed in construing and interpreting a restriction. It is, therefore, important to determine what the grantor intended to prohibit by Restriction #9.

When that Restriction is read in conjunction with #1 and #10, it is clear that the grantor intended to preserve a residential character for Shipley Heights. A reasonable inference is that he wanted to eliminate the noise, odor and potential health hazards which the raising of cattle, pigs, poultry and so on would present. And #10 confirms that when it states: "No * * * offensive * * * activity shall be carried on upon any portion of the * * * tract * * * nor shall anything be done thereon which may be or become an annoyance or nuisance to the neighborhood."

■ With this background in mind, I turn to Restriction #9 which prohibits the keeping of "poultry." Does that word include pigeons? In the context of this case, I conclude that it does for two reasons.

First, the ordinary dictionary meaning of poultry includes pigeons. Thus, says *Webster's New International Dictionary* (2 ed.), 1944, poultry means:

"Any domesticated birds which serve as a source of food either eggs or meat. In the order of their importance to man, *poultry* includes chickens, turkeys, ducks, geese, guinea, fowl pigeons and pheasants."

Second, while there are decisions to the contrary, pigeons have been regarded as poultry. Compare Commonwealth v. Lewis, 7 Pa.Co.Ct.R. 558 (Bucks, 1890); Bartels v. State, 91 Neb. 575, 136 N.W. 717 (1912); State v. Willers, 130 S.W.2d 256 (Mo.App.1939). I do not regard the distinction between pigeons raised for the table and those kept for sport as significant for present purposes.

Since pigeons are poultry, the keeping or placing of them on property in Shipley Heights is a violation of Restriction #9.[1]

### B.

Defendants argue that affirmative defenses of estoppel and waiver raise such broad subjective matters concerning notice and knowledge that summary judgment is not appropriate and the motion should therefore be denied.

■ In their affidavit defendants allege various violations of restrictions regarding fences, type of building, building size, setback and use for business purposes.[2] They say that these amount to a general waiver but the scope of the violations and waivers, knowledge by property owners, and so on, should await development at trial.

In my judgment the broad allegations made by defendants are not a sufficient basis to deny the motion for summary judgment. I say this for several reasons.

---

1. Plaintiffs filed an affidavit, not contested, by a professional poultry processor and dealer saying that the trade meaning of the word "poultry" includes pigeons.

2. Plaintiffs have moved to strike the affidavit on the ground of late filing but I regard that motion as mooted by this decision.

**574**

First, the affidavit on which defendants rely to establish violations amounting to a general waiver of *all* restrictions is very broad with little, if any, specificity: it states only that violations of a restriction (identified only by a reference to its number in the document imposing the restriction) has occurred at specific addresses without any of the details which would enable the Court to determine whether the defendants have factual knowledge which would make the affidavit probative under Rule 56.

Second, there are some eighteen plaintiffs who own ten separate properties. In their affidavit defendants say that plaintiffs owning two of the lots have violated one or more of the restrictions, but assuming their disability, this would not preclude the other plaintiffs from properly bringing the present complaint before the Court. Compare Bennett v. Lane Homes, 369 Pa. 509, 87 A.2d 273 (1952).

Third, assuming that plaintiffs are in violation of certain restrictions, there is nothing in defendants' affidavit stating that any of the plaintiffs is in violation of Restriction #9 which is here in issue. And one's own violation of a restriction will not estop him to compel the observance of another restriction beneficial to his property. Maganini v. Hodgson, 138 Conn. 188, 82 A.2d 801 (1951). While that rule may be limited by the clean hands doctrine to a person who is not himself in substantial violation of the restrictions, defendants have not even made a tentative showing that all or any of the plaintiffs is in that situation.

Fourth, abandonment or acquiescence in the violation of certain restrictions does not amount to abandonment of another separate and distinct restriction material and beneficial to the owners of lots affected by it.[3] Rogers v. Zwolak, 12

Del.Ch. 200, 110 A. 674 (1920); Wallace v. St. Clair, 147 W.Va. 377, 127 S.E.2d 742 (1962); 26 C.J.S. Deeds § 169; 7 Thompson on Real Property § 3173. Assuming waiver or abandonment of the restrictions as to setback, fences and buildings, this, without more, does not show intent to abandon the residential nature of the community nor to waive Restriction #9 relating to pigs, cattle, poultry, and so on.

Finally, I should also note that the restrictive covenants specifically state that invalidation of one shall not affect the others which "shall remain in full force and effect."

Plaintiffs' motion for summary judgment will be granted.

---

3. Affidavits in support of plaintiffs' motion for summary judgment were filed by some ninety-seven property owners in Shipley Heights stating that the keeping of pigeons (by defendants) was noxious and offensive to them.